[No. 31086.  Department Two.  May 2, 1950.]

BLANCHE C. LARSON, *Appellant*, v. A. W. LARSON
CONSTRUCTION COMPANY *et al., Respondents.*[1]

[1]Reported in 217 P. (2d) 789.

*Horace W. Hall* and *Lycette, Diamond & Sylvester,* for appellant.

*Rummens, Griffin & Short* and *Paul R. Cressman,* for respondents.

HAMLEY, J.—In October, 1945, A. W. Larson and Floyd E. Johnson entered into an oral partnership agreement to engage in commercial building and construction contracting in Seattle. The partners did business under the name of A. W. Larson Construction Co.

On March 29, 1946, they organized a corporation having the same objects and purposes, and using the same name (hereinafter referred to as the corporation). The incorporators were Larson and Johnson and their respective wives. Larson and Johnson each subscribed for two hundred forty-nine shares of the five hundred shares of authorized capital stock, and their respective wives each subscribed for one share. Larson was president and Johnson was secretary of the corporation, and both were directors. On April 2, 1946, a bill of sale was executed by the partners, conveying all of the assets of the partnership to the corporation. The indi-

vidual items constituting the assets of the partnership are not described in this bill of sale.

On the same day, April 2, 1946, there was executed the affidavit of paid-in capital in usual form. This affidavit recites that fifty thousand dollars initial capital, as stated in the articles of incorporation, with which the corporation would commence business, had been paid in to the corporation. The minutes of the shareholders' meeting, likewise held on April 2, 1946, recite that

". . . the assets to be received by this corporation, of a value of $50,000.00, have been transferred to it by Bill of Sale from A. W. Larson and Floyd E. Johnson, d/b/a A. W. Larson Construction Co., a partnership, said Bill of Sale being attached to these minutes. . . ."

and recite further the allotment of stock and a direction that it be issued to the subscribers.

The report of allotment of shares of the corporation, signed on the same date by both Larson and Johnson, recites the allotment and issue of five hundred shares of the corporation's non-par stock and recites further that the corporation

". . . has received as consideration therefore, all assets of the business of A. W. Larson and Floyd E. Johnson, d/b/a A. W. LARSON CONSTRUCTION Co., a partnership; that the corporation is not authorized to issue capital stock that has par value; that the value received for said 500 shares is $50,000.00."

On October 8, 1946, A. W. Larson died. By the terms of his will, all of his stock in the corporation was bequeathed to his wife, Blanche C. Larson. Mrs. Larson thus became the owner of two hundred fifty shares, or fifty per cent, of the stock of the corporation. On November 7, 1946, a meeting of the stockholders was held to discuss what should be done with the business. At this meeting, Johnson was elected president of the corporation and Wesley Larson, son of A. W. Larson, was elected secretary. The following resolution was then adopted:

"It was decided as a matter of policy that the present jobs of the corporation would be completed; that an account-

ing would be had and that the corporation would thereafter be dissolved unless it could be sold to the person interested in purchasing the same."

Johnson continued to draw a salary of five hundred dollars a month as president of the corporation until April 1, 1947. During this period, a number of building projects were carried on in the name of the corporation. About April 1, 1947, Johnson commenced doing a similar business on his own account under the name of Commercial Construction Co. Between the meeting of November 7, 1946, and February 17, 1948, when this action was instituted, the interested parties made several unsuccessful attempts to come to an agreement for the dissolution of the corporation and the distribution of its assets.

When it became apparent that no agreement could be reached, Mrs. Larson began this action against the corporation, Johnson individually, and Johnson doing business as Commercial Construction Company. The prayer of the complaint was for the appointment of a receiver for the corporation, and for a winding up of its affairs and division of its assets. A temporary restraining order and an order to show cause were issued. These orders were dismissed on stipulation, pursuant to which Johnson, as defendant, deposited $15,500 in the registry of the court. A later stipulation was entered into between counsel for plaintiff and defendant, under which it was agreed that the cause should be tried

". . . as an accounting case between plaintiff and defendants of the affairs of the A. W. Larson Construction Co., Floyd E. Johnson, individually, Floyd E. Johnson, doing business as Commercial Construction Co., and of the Commercial Construction Co., without the appointment of a receiver, and on the issues joined between the plaintiff and defendants . . ."

Following a trial to the court, a decree was entered in which it was recited that a full and complete accounting had been had both of the partnership and of the corporation. As a result of such accounting the decree provided that plaintiff should receive $10,235.26 of the funds deposited in the

registry of the court, the remainder of such funds to be returned to Johnson.

Plaintiff has appealed. Assignments of error Nos. 1 and 2 inhere in the other assignments and will not be discussed separately. Appellant's third assignment is that the trial court erred in permitting respondents to go behind the organization of the corporation and into the affairs of the partnership in determining whether Larson and respondent had made equal contributions to the assets of the corporation. (When used in the singular, the term respondent will refer only to Johnson.)

The provisions of the decree dividing between the parties the funds which had been deposited in the registry of the court, were predicated upon a finding that the net worth of the corporation, adjusted as of February 16, 1949, was $23,945.39. In arriving at this net worth figure, the trial court apparently accepted, as a proper and legal accounting between the parties, the figures set forth in the net worth statement prepared by the witness Van Zante. Among other things, this statement charged appellant with five thousand dollars as a "partnership investment a/c adjustment." This item resulted from a determination by the witness that, upon the formation of the original partnership between Larson and respondent, the latter had made a capital investment of ten thousand dollars, but Larson had made no capital investment.

Appellant advances several arguments in support of her contention that it was error for the trial court to go behind the corporation and include partnership transactions in arriving at an accounting. One of these arguments is that the stipulation upon which the case was tried as an accounting case relates only to an accounting of the affairs of A. W. Larson Construction Co., *the corporation,* and the rights of appellant and respondent to the assets of the corporation. Respondent just as strenuously argues that the stipulation contemplated an accounting of partnership as well as corporation affairs.

The issues tendered by the complaint related only to corporation affairs. Paragraph VI of respondent's affirmative

defense, as modified by a trial amendment, brought into issue an accounting which had previously been had of partnership as well as corporation affairs. It was in this posture of the case that the parties entered into the stipulation set out above. Three months later, appellant filed a reply pleading estoppel on the part of respondent with respect to any attempt to go into matters prior to the organization of the corporation.

The stipulation refers to an accounting "of the affairs of the A. W. Larson Construction Co. . . . ." That was the name of the partnership as well as of the corporation. If it had been intended to limit this designation to the corporate entity, it would have been easy to say so. The stipulation was drawn by appellant's counsel. Another consideration pointing to the same conclusion is the fact that the stipulation provides for an accounting of the affairs of Johnson, individually, without limitation as to the beginning of the accounting period. This would seem to open up the question of Johnson's intrapartnership transactions, and, if this is so, the intrapartnership transactions of the other partner, Larson, would necessarily be brought under review.

The stipulation provides that the case would be tried "on the issues joined between plaintiff and defendant." Appellant argues that, if we consider the question of estoppel raised in the reply, then one of these issues saved by this provision of the stipulation was the propriety of any accounting of partnership affairs. But the reply was not served or filed until *after* the filing of the stipulation. Hence, it can hardly be said that issues tendered for the first time in the reply were protected by the stipulation. We are inclined to believe that the stipulation, read as a whole, expresses an intention to open up the question of partnership accounting.

Moreover, we are convinced, from a study of the record, that the issue of estoppel was waived at the trial. In his opening statement, counsel for appellant several times asserted that the parties were estopped to go back into the partnership affairs. The trial court then inquired

whether or not, regardless of the question of estoppel, there would be any objection to receiving testimony as to events prior to the organization of the corporation "for such light as they may throw upon subsequent events." Counsel for appellant indicated that his contention of estoppel was made "just for the purposes of the record" in the event of an appeal, but aside from this he was glad for the court "to have the whole picture."

From this point on, the bars were let down completely, and both parties went extensively into partnership affairs without any objection being voiced. Appellant's counsel called respondent as his first witness and immediately launched into an interrogation about partnership assets, including the five-thousand-dollar partnership adjustment item now in question. The record contains several other instances where counsel for appellant went into the partnership affairs, either on direct or cross examination. Appellant's counsel interposed no objection to the extensive testimony which was presented on behalf of respondent concerning these partnership transactions. Exhibit No. 9, which was the net worth statement submitted by witness Van Zante, and contained the five-thousand-dollar partnership investment adjustment item based on an accounting of partnership affairs, was received in evidence without objection.

We do not believe that the general remarks made by counsel for appellant in his opening statement, referred to above, obviated the necessity of interposing appropriate objections to testimony and exhibits dealing with partnership affairs, if it was desired to preserve the issue of estoppel. Nor does it seem to us that appellant's own presentation of the affairs of the partnership made during her case in chief, is compatible with the position now taken. Any reference whatever to the original capital contributions to the partnership would be inconsistent with the contention that the court was required to accept, as conclusive, the recitals as to capital contributions contained in the corporate organization papers.

It is our conclusion that the matter of partnership accounting was brought in issue by the stipulation, or by acquiescence of the parties during the course of the trial. It is therefore unnecessary for us to consider whether, in the absence of such stipulation or acquiescence, an examination of partnership accounts is precluded by the fact that the partners received an equal number of shares as incorporators of the succeeding business.

■ Appellant also contends, under this assignment of error, that if Larson failed to make his agreed contribution to the partnership, respondent's remedy was to file a creditor's claim in the probate proceedings of the A. W. Larson estate and there proceed to litigate the question. Appellant further argues that, respondent having failed to file such a claim within the time provided by law, the claim is now barred by Rem. Rev. Stat., § 1477 [P.P.C. § 197-1].

Had this been an action on behalf of the estate, the item in question would not have been subject to the non-claim statute, for it is asserted only by way of set-off. *McDonald v. McDonald,* 119 Wash. 396, 206 Pac. 23, and cases there cited. Actually, this action was instituted by appellant in her individual capacity, as a distributee, and not as a personal representative, of the estate. Appellant is in no better position, as a distributee, to invoke the bar of Rem. Rev. Stat., § 1477, than she would have been as testatrix or administratrix of the estate.

We hold that the trial court did not err in permitting respondent to go behind the organization of the corporation and into the affairs of the partnership in determining whether Larson and respondent had made equal contributions to the assets of the corporation. Appellant's third assignment of error is therefore not well taken.

Appellant's fourth assignment is that the trial court erred in finding that Larson made no capital investment in the partnership, and in finding that appellant should be charged with the sum of five thousand dollars on this adjustment.

The trial court's findings were based upon testimony and exhibits reflecting an examination of the accounts of the partnership and the corporation. Appellant argues that the

corporate minutes and records are the best evidence as to whether Larson paid full consideration for his interest in the corporation. Accordingly, it is argued, respondent should not have been permitted to introduce evidence tending to vary or contradict the corporate minutes and records. ·

It is a general demand of the law that the best possible evidence be produced. *Kennedy v. Canadian Pac. R. Co.*, 87 Wash. 134, 151 Pac. 252. In the application of this rule it has been held that the corporate books are the best evidence as to the facts there shown. *Seid Chee v. Sanitary Fish Co.*, 103 Wash. 345, 174 Pac. 443. But where the corporate records are not available or are incomplete, secondary evidence is admissible. *Walnut Park Lbr. & Coal Co. v. Roane*, 171 Wash. 362, 17 P. (2d) 896.

We have already found that, in this accounting case, it was proper to examine the partnership affairs. Since the corporate books and records constitute no evidence as to the partnership accounts, the best evidence rule is not here involved.

This brings us to the question of whether the evidence supports the findings of the trial court respecting this five-thousand-dollar adjustment. These findings were apparently based principally upon the testimony of Van Zante, an accountant. He had originally been hired by all members of the corporation to straighten out the corporate accounts for income tax purposes. Larson, who had been in charge of the books of the partnership, and of the succeeding corporation up to the time of his death, had kept almost no accounts of the business transactions. Van Zante was therefore forced to begin with some of the concrete figures available at about the time the corporation's business was finished, and work backwards to arrive at the original financial arrangement. In this process he found it convenient to begin with the assumption that Larson and respondent had made equal capital investments in the business. After obtaining a full picture of the situation, however, Van Zante came to the conclusion that a check for ten thousand dollars, given to the partnership by Johnson on December 1, 1945, constituted the only cash investment by either party.

During the trial respondent testified: "I think he [Larson] put $5,000 in the partnership." Van Zante concluded that this sum was a loan to the corporation, and adjusted the accounts by crediting appellant with this full amount (less some repayments). This interpretation gave appellant the benefit of the doubt. If this payment had been considered an investment rather than a loan, appellant would have been entitled to a credit of only half that amount on the adjustment of accounts.

Appellant brought out at the trial the fact that at least two other checks, one for three thousand dollars and another for five thousand dollars, had been paid into the corporation from Larson's personal account at various times. Van Zante testified that these payments represented corporate accounts receivable paid to Larson personally, and transferred to the corporation by Larson's personal checks.

The testimony was inconclusive as to whether Larson contributed value in the form of "good will" in excess of any such contribution by respondent. Both parties loaned machinery and tools to the business. The decree provides that all machinery and tools owned by Larson prior to his death are the property of appellant and are to be surrendered to her.

We are of the view that the trial court's finding that Larson had made no capital investment and that appellant should be charged with the sum of five thousand dollars on this adjustment, is supported by the weight of the evidence. Appellant's fourth assignment of error is therefore without merit.

Appellant's last assignment of error is that the trial court erred in finding that appellant had no interest in the profits made on certain jobs which were not completed until after Larson's death. The profits on six construction jobs are in issue on this phase of the case. These may be designated as the Anderson Buick Company, Isaacson, Dr. Scott, Wockner, Holleman, and Dr. Irwin jobs. There is evidence to indicate that profits from these jobs, aggregating $4,324.86, earned from the time of Larson's death to April 1, 1947 (when respondent began operating as Commercial Con-

struction Co.), were received by respondent. Additional profits from these jobs from April 1, 1947, until their respective completion dates, aggregating $8,990.94, were also received by respondent. The effect of the decree was to permit respondent to retain all of these profits.

Between November 7, 1946, and April 1, 1947, respondent was the president of the corporation and drew a salary of five hundred dollars a month. Most of the jobs in question were in progress during this period and were carried on under the name of the corporation. The corporate assets and equipment were used on these jobs. After April 1, 1947, respondent continued the jobs to completion under the name of Commercial Construction Co.

Calling attention to these facts, appellant invokes the rule that officers and directors of a corporation are deemed to stand in a fiduciary relation to the corporation. Rem. Rev. Stat. (Sup.), § 3803-33 [P.P.C. § 445-7]. *Red Top Cab Co. v. Hanchett,* 48 F. (2d) 236, and other cases are cited for the proposition that where an officer or director of a corporation sets up a competing business which cripples or injures the corporation, equity will intervene to impress a trust for the benefit of the corporation upon the profits arising from the competitive business. Appellant argues that this principle should be applied here.

■ It is the settled law of this state that officers and trustees of a corporation act in a fiduciary capacity and, as such, are bound to exercise the utmost good faith in conserving the property and furthering the interests of the corporation. *Central Bldg. Co. v. Keystone Shares Corporation,* 185 Wash. 645, 56 P. (2d) 697.

With this rule in mind we have closely scrutinized the transactions in question. The problem confronting the trial court was to determine whether any of the questioned projects were "present jobs of the corporation" within the meaning of the resolution of November 7, 1946, quoted in the summary of facts stated at the outset of this opinion. As to such "present jobs," the resolution clearly contemplated that the corporation should reap the profits.

It is conceded that the first unit of the Anderson Buick job was let during the lifetime of Larson. Appellant was given her share of the profit on that unit. Several witnesses testified that the six additional units of construction work for Anderson Buick were handled under separate contracts with separate building permits. A three weeks' delay in work intervened between the first and second units after Larson's death.

The Isaacson job was contracted by the corporation and, under ordinary circumstances, the corporation would have been entitled to all of the profits. However, there was testimony that, in furtherance of the plan to wind up the affairs of the corporation, it was agreed that April 1, 1947, would be taken as a cut-off date. After that date, according to testimony which the trial court was justified in believing, it was understood that respondent's five-hundred-dollar monthly salary would cease and in lieu thereof he would be entitled to all profits from any corporation jobs still in progress. The Isaacson job was the only one which fell in this category. In compliance with this agreement, the effect of the decree was to give appellant one-half of the profits on this project up to March 31, 1947, and to give respondent all profits realized after that date.

The record contains very little reference to the Dr. Scott job, and provides no basis for a ruling that respondent wrongfully retained the profits on that project. The Wockner job is likewise mentioned only incidentally in the record and is not discussed at all in the briefs. The Holleman job was a small undertaking carried out under a contract executed after Larson's death. The corporation had done another job for this same customer, but under an entirely different contract and in a different section of the city.

The Dr. Irwin job concerned a clinic which was not under construction until at least three and a half months after Larson's death. Though the first contact with Dr. Irwin had been made by Larson, the final drafting and signing of the contract was transacted between respondent and Dr. Irwin. The architect on this job testified that all that

Larson had done was to draw some impromptu sketches. Dr. Irwin testified that he saw Larson only once, and that this was but the briefest kind of an interview. Dr. Irwin had originally contemplated an $18,000 to $24,000 building. However, subsequent to Larson's death Dr. Irwin determined to build a $32,000 building. The contract was let on a cost-plus basis and turned out to be a $42,000 structure.

The trial court was warranted in finding, on the evidence summarized above, that the jobs or portions thereof from which respondent derived and retained profits, were not "present jobs of the corporation," within the meaning of the resolution of November 7, 1946. Nor is this conclusion weakened by the fact that, from November, 1946, to April, 1947, respondent carried on all of these projects under the corporate name and made use of corporate assets. Respondent was not required to continue with the corporation after Larson's death. He stayed on with the corporation to help wind up its affairs. The decreasing number of corporation projects was bound to reduce his profits, although his salary continued. He could not be expected to devote his full time to the dwindling affairs of the corporation and to lay no groundwork for the continuance of this line of work on an individual basis after April 1, 1947. The plan which was followed was a sensible arrangement, agreed to in advance, which worked to the advantage of all concerned during this transition period. We cannot say, on the record before us, that there was any breach of the fiduciary relationship.

While the testimony is in conflict on some points, we believe there is ample evidence to support the findings of the trial court as to the division of profits on these construction jobs. We conclude that this assignment of error is not well taken.

The judgment is affirmed.

SIMPSON, C. J., ROBINSON, MALLERY, and HILL, JJ., concur.