[No. 44911.   En Banc.   January 4, 1979.]

THE STATE OF WASHINGTON, *Respondent,* v. JOHN
RUSSELL FRICKS, *Appellant.*

*Robert C. Boruchowitz* of *Seattle–King County Public Defender*, for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *James A. Trujillo, Deputy,* for respondent.

HOROWITZ, J.—The principal question here is whether a criminal defendant's right to due process of law is violated when the State draws the attention of the jury to the fact the defendant remained silent following arrest and advisement of *Miranda* rights. In defendant Fricks' trial for second–degree burglary the State elicited testimony regarding his post–arrest silence during its case in chief, and also commented on it directly during closing argument. We hold such conduct deprived defendant of due process of law, and reverse for a new trial.

Defendant John Russell Fricks was tried by a jury and found guilty of second–degree burglary. He makes six assignments of error in his appeal to this court. We find two of the errors to be prejudicial, each requiring a remand for a new trial. We reach the remaining issues for the guidance of the trial court on remand. The issues raised require a full statement of the facts.

At approximately 3 a.m. on the morning of October 8, 1976, defendant Fricks and his roommate John Schlaefli approached Officer Gregory Seth of the Seattle Police on Queen Anne Avenue in Seattle. They told the officer they had seen a suspicious person and a broken window at a

nearby gas station. The three men went to the gas station together, where Officer Seth radioed for more police units.

The officer immediately questioned defendant and Mr. Schlaefli about what they had seen that night. They told him they had been walking together past the station on the way home from a restaurant, and had seen someone near the station. They had also seen the broken window from where they were standing on the sidewalk. Mr. Schlaefli was unable to say definitely where the stranger had been standing when he saw him, or in which direction the stranger had gone. Likewise, defendant was vague and uncertain about the exact spot where he had been standing when he noticed the broken window at the station. The officer testified at trial that he could not see the broken window from the spot defendant finally chose as the place where he had been standing. Defendant and Mr. Schlaefli also told the officer that Mr. Schlaefli had recently been fired from a job at that station.

After a backup unit arrived Officer Seth interviewed the two men separately. According to his testimony, defendant's account of where he and the stranger had been standing was inconsistent and vague. The officer did not record any of the details of defendant's account in his report. The officer took the names and addresses of the two men, then allowed them to leave.

After they left, the manager of the station arrived. Apart from the broken window, everything at the station appeared to be in order. The rug covering the floor safe was neatly in place; the keys to the safe were just a few inches away from their usual hiding place. Both the safe and the cash drawer, however, were empty. The manager testified at trial that station employees kept a daily count of currency and coins on a tally sheet. He had looked at the day's tally and reported to the police what the day's receipts had been. The tally sheet was not produced at trial, but the station manager was allowed to testify, over defendant's objections, that the receipts had been approximately $102.

Following the manager's inspection of the station, Officer Seth and another officer went directly to defendant's apartment and placed both defendant and Mr. Schlaefli under arrest. They were advised of their *Miranda* rights, which included their right to remain silent, and taken to the police station. There defendant was advised twice more of his constitutional rights. While the officer there was filling out the police report, defendant beckoned to him and volunteered to make a confession. His oral confession was reduced to writing, and defendant signed the statement. Mr. Schlaefli was released shortly thereafter. The next day defendant retracted his confession, saying he had made the statement in order to remove suspicion from his roommate, who was on probation, and to hasten their release.

Before defendant was released from custody his roommate vacated their apartment. The manager of the building, cleaning the apartment out, found a towel with $104 rolled into it behind a dresser in defendant's room. He gave the money to the police. He testified at trial that when defendant was released he returned to the apartment and asked the manager if Mr. Schlaefli had taken "his" money. Defendant claims he was referring to $50 he had saved from his earnings.

As noted above, defendant was convicted of second-degree burglary and now appeals. He cites as error: (1) the State's references at trial to his silence following arrest; (2) the admission of the station manager's hearsay testimony regarding the contents of the tally sheet; (3) admission into evidence of defendant's signed confession; (4) admission of Officer Seth's opinion evidence; (5) the court's denial of defendant's motion for a jury view of the station; and (6) the court's refusal of defendant's proposed instruction No. 19. We hold defendant was deprived of a fair trial by the State's references to his silence following arrest, and that the trial court committed prejudicial error by admitting the manager's hearsay testimony regarding the contents of the tally sheet. The trial court did not err, however, in admitting defendant's confession and Officer Seth's

opinion testimony, or denying the jury view and proposed instruction.

## I

At defendant's trial the prosecutor elicited testimony from both arresting officers concerning the fact that defendant made no statement to them when he was arrested. The prosecutor specifically asked each officer whether defendant made any statement after being advised of his *Miranda* rights, thereby drawing the attention of the jury to the fact that defendant remained silent. A third reference to this post–arrest silence occurred when Officer Seth was asked whether defendant had .volunteered any statement to him before the incident at the police station. In his closing argument, the prosecutor drew the attention of the jury to defendant's silence once again by remarking that defendant had offered no statement when placed under arrest. The record therefore shows that the prosecution put before the jury the fact that defendant offered no exculpating story when arrested. This conduct penalized defendant for exercising his constitutional right to remain silent by implying that his silence was consistent with guilt and inconsistent with the exculpating story given at trial. Defendant's right to due process of law was thus violated.

■ When a criminal defendant has been advised of the right to remain silent, an ensuing silence may be merely the exercise of that right. "Thus, every post–arrest silence is insolubly ambiguous." *Doyle v. Ohio,* 426 U.S. 610, 617, 49 L. Ed. 2d 91, 96 S. Ct. 2240 (1976). Calling attention to that silence, and suggesting thereby that an unfavorable inference might be drawn, violates due process. This basic constitutional principle was set out by the United States Supreme Court in *Doyle v. Ohio, supra,* in an opinion which drew on the earlier case of *United States v. Hale,* 422 U.S. 171, 45 L. Ed. 2d 99, 95 S. Ct. 2133 (1975).

In *Hale* and *Doyle* the defendants were cross–examined about their post–arrest silences when they testified at their

trials. In *Hale* the court remanded for a new trial on general principles of evidence, holding the probative value of the defendant's silence was outweighed by the prejudice to him of admitting the evidence. The court decided the issue on constitutional grounds in *Doyle,* though, reasoning that due process is violated when the prosecution calls attention to a defendant's post–arrest silence and suggests the silence casts doubt on the defendant's credibility.

In this case the objectionable references to defendant's silence were made during the State's case in chief and in closing argument, not on cross–examination. We believe the *Doyle* principle applies with equal force, however. The highly prejudicial suggestion that defendant's post–arrest silence is consistent with guilt, and not with his exculpating story at trial, can be made just as effectively by questioning the arresting officer or commenting in closing argument as by questioning defendant himself. *Accord, United States v. Impson,* 531 F.2d 274 (5th Cir. 1976) (testimony regarding silence elicited on direct examination of arresting officer); *Minor v. Black,* 527 F.2d 1 (6th Cir. 1975) (comment on defendant's silence during closing argument); *Commonwealth v. Cobb,* 373 N.E.2d 1145 (Mass. 1978) (references elicited from arresting officer and made in closing argument); *Missouri v. Pogue,* 563 S.W.2d 544 (Mo. Ct. App. 1978) (references elicited affirmatively, and also used to impeach on cross–examination). We therefore conclude the State's conduct violated due process. *See United States v. Impson, supra; Minor v. Black, supra; Commonwealth v. Cobb, supra; Missouri v. Pogue, supra.*

■ The State contends, however, that any constitutional error was harmless. We cannot agree. Defendant's credibility was at issue because he testified on his own behalf on disputed matters. His exculpating story was plausible. While the State has substantial evidence against him, its case is not overwhelming. Under these circumstances we cannot say that, had the references to appellant's post–arrest silence been excluded, "the jury would probably not have rendered a different verdict." *State v. Gibson,* 79

Wn.2d 856, 861, 490 P.2d 874 (1971). We conclude prejudicial constitutional error was committed, and defendant must have a new trial.

## II

The amount of money stolen from the gas station that night in October 1976 was proved at trial by the manager's testimony regarding the contents of the tally sheet kept by station employees. The only foundation laid for admission of this hearsay evidence was the manager's testimony that such a tally sheet was kept. The document itself was not produced, nor was any explanation given why it was not available. Furthermore, no foundation was laid to establish in the first place that the contents of the tally sheet were admissible to prove the amount of money which should have been in the safe.

In seeking to prove the contents of the tally sheet, the State must comply with the so-called Best Evidence Rule. This basic principle of evidence generally requires that "the best possible evidence be produced." *Larson v. A.W. Larson Constr. Co.,* 36 Wn.2d 271, 217 P.2d 789 (1950). As applied to proof of the terms of a writing, it requires that the original writing be produced unless it can be shown to be unavailable "for some reason other than the serious fault of the proponent." McCormick, *Handbook of the Law of Evidence* § 230, at 560 (2d ed. 1972). *See also Larson v. A.W. Larson Constr. Co., supra.* In this case the State failed to produce the document or to make any showing of its unavailability. Under these circumstances the testimony of the manager as to its contents was not an acceptable method of proof.

Even production of the tally sheet would not necessarily make its contents admissible as evidence, however. The tally sheet is itself hearsay which must be shown to be admissible, in this case under the Uniform Business Records as Evidence Act, RCW 5.45. Appropriate testimony must establish its identity and mode of preparation in order to lay a foundation for admission. *See* RCW 5.45.020.

The manager's testimony in this case was not adequate under the statute to lay such a foundation. Since the document itself was not necessarily admissible, then, the manager's testimony regarding the contents of the sheet was inadmissible hearsay. *Cf. State v. Rutherford,* 66 Wn.2d 851, 405 P.2d 719 (1965) (where report is admissible under uniform act, testimony of person who made report may be admitted to show contents of report).

The manager's testimony was apparently the only proof offered of the amount of money stolen from the gas station. The State relied upon the similarity of that amount to the amount of money found in defendant's room to create an inference the money found there was in fact the stolen money. Admission of the manager's testimony was thus clearly prejudicial error requiring reversal and a new trial.

Defendant moved to suppress his confession on the ground his warrantless arrest was illegal and the confession was tainted with that illegality. *See State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977). The trial court denied the motion, and the confession as introduced at trial. We find no error.

■ Defendant contends the arrest was illegal because the arresting officer did not have probable cause to believe he had committed a felony. *See State v. Todd,* 78 Wn.2d 362, 474 P.2d 542 (1970). Probable cause exists "where the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in a belief that an offense has been . . . committed." (Citation omitted.) *State v. Gluck,* 83 Wn.2d 424, 426–27, 518 P.2d 703 (1974). The determination will rest on the totality of facts and circumstances within the officer's knowledge at the time of the arrest. *State v. Cottrell,* 86 Wn.2d 130, 542 P.2d 771 (1975). The standard of reasonableness to be applied takes into consideration the special experience and expertise of the arresting officer. *State v. Cottrell, supra; State v. Todd, supra.*

At the time of defendant's arrest Officer Seth knew the circumstances suggested the thief had knowledge of the location of the safe and the keys, and that Mr. Schlaefli had recently been employed at the station. He had observed defendant and Mr. Schlaefli as they related, with obvious lack of certainty, their versions of the evening's events. He had reason to disbelieve their story of seeing the broken window as they walked along the sidewalk, because he found the window could not be seen from that vantage point. We cannot say it was unreasonable for the officer to form a belief that appellant and his roommate had committed the burglary. We hold the warrantless arrest was legal and defendant's confession is admissible in evidence.

## III

Defendant's remaining assignments of error do not require extensive discussion. The first pertains to a conclusory statement made by Officer Seth on redirect examination. When asked why he did not include the details of defendant's account in his report, which was prepared after defendant's confession, he answered he didn't think it pertinent to include defendant's "lies." The court denied defendant's motion to strike the word "lies", defendant contending that the word constitutes inadmissible opinion evidence from a lay witness. We note the opinion was not offered for the truth of the statement—that is, it was not offered to prove that defendant had in fact lied. It was rather an explanation why the officer had not included this information in his report. The answer certainly could have been phrased in less provocative terms. Under the circumstances here, though, where the question was asked only to show the officer's reasons for omitting the information from his report, and the relevant facts underlying the officer's conclusion were already in the record, the answer was not unduly prejudicial. We need not and do not decide whether the court's refusal to strike was per se erroneous. For the reason last stated, a reversal would not be required in any case.

■ Defendant moved for a jury view of the gas station after dark because of conflicting testimony on the question whether the broken window could be seen from the sidewalk. He assigns error to the court's denial of the motion. The purpose of a jury view is to aid the jury in better understanding the evidence, not to take new evidence. *Sauls v. Scheppler*, 57 Wn.2d 273, 356 P.2d 714, 85 A.L.R.2d 506 (1960). In this case a jury view would only serve to let the jurors make their own observation of whether the broken window could be seen from the sidewalk. This would be in effect, new evidence, and not simply an opportunity to clarify existing evidence. This was not a proper case for a jury view, and the court did not err in denying the motion.

■ Finally, defendant contends the court erred in refusing his proposed instruction to the effect that a confession alone is inadequate evidence to convict. The trial court correctly instructed the jury, however, that the confession was to be considered along with all other evidence. The instruction given was fully adequate to allow defendant's counsel to argue his theory to the jury. *See State v. Johnson*, 12 Wn. App. 548, 530 P.2d 662 (1975).

Reversed and remanded for a new trial.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, and HICKS, JJ., concur.