# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of | No. 71100-8-I |
| D.S. | DIVISION ONE |
| | UNPUBLISHED OPINION |
| | FILED: January 26, 2015 |

LEACH, J. — D.S. appeals a trial court 14-day involuntary commitment order. He challenges the trial court's admission of certain evidence and the sufficiency of evidence to prove that he presented a likelihood of serious harm to others due to his mental disorder. Because D.S. did not object at the hearing to the court's admission of the challenged evidence on the grounds he raises on appeal, we do not consider this issue. And because sufficient evidence supports the trial court's finding that as a result of his mental disorder, D.S. poses a substantial risk to others, we affirm the trial court.

## Background

On October 18, 2013, police brought D.S. to the Swedish Medical Center emergency room after an incident on a city bus. Witnesses reported that D.S. talked loudly and made threats to people around him. When the driver asked D.S. to leave the bus, D.S. threatened the driver. People moved away from D.S. and left the bus when it stopped. When police arrived, D.S. reported injury, so

police transported D.S. to Swedish, and doctors evaluated him for pain. Police cited him and released him.

The next day, police responded to a 911 call from the apartment D.S. shared with his wife. D.S.'s wife reported that D.S. kept her from leaving the residence, forced her to watch porn, and called her names. When police arrived, D.S. spoke nonstop, appeared belligerent and aggressive, and removed all of his clothing as the officers spoke to him. He went with police to Harborview Medical Center.

A designated mental health professional filed a petition for initial detention after an evaluation of D.S., resulting in D.S.'s involuntary admission to Harborview.

The trial court held a probable cause hearing under RCW 71.05.240. The State called Dr. Brent O'Neal. As a psychologist at Harborview and the State's expert witness, Dr. O'Neal tried to meet with D.S. in person, but D.S. refused. Instead, as the basis for his testimony, Dr. O'Neal reviewed D.S.'s medical chart, talked to the treatment team, and observed his behavior at Harborview and at court on the day of the hearing.

Dr. O'Neal testified that D.S. had mental and emotional impairment and diagnosed him with "[b]ipolar disorder type 1, most recent episode manic with psychotic features, and antisocial personality disorder." He testified that this had an adverse effect on D.S.'s cognitive and volitional functions and that he presented a substantial risk of physical harm to others.

Dr. O'Neal relied on portions of D.S.'s Harborview medical chart to form his opinions. The court admitted some of his testimony of the medical chart notes as opinion evidence and some as substantive evidence under the business record and ER 803(a)(4) exceptions to the hearsay rule. The court admitted as opinion evidence Dr. O'Neal's testimony from the chart about the October 18 incident on the city bus and the October 19 incident with D.S.'s wife.

The trial court admitted as substantive evidence, over objection on foundation grounds, a note prepared by advanced registered nurse practitioner Jennifer Johnson included in D.S.'s October 19 medical record. When staff placed D.S. on a hospital bed in restraints, he screamed obscenities and recited song lyrics. Dr. O'Neal testified from the chart that D.S. had attempted to flip the hospital gurney he was on and bite hospital staff. The trial court admitted this as substantive evidence, finding that "the foundation for this medical record has been laid, and I think that's sufficient, too, for purposes of medical diagnosis or treatment." Dr. O'Neal testified further from an October 23, 2013, note that D.S. did not believe his psychiatric medications worked and did not plan to take them when he left the hospital. He testified that Harborview placed D.S. in the locked unit reserved for the "most psychiatrically decompensated individuals . . . . typically used for the patients that are of most concern." And when Dr. O'Neal attempted to contact D.S. before the trial court hearing, he witnessed D.S. demonstrate highly agitated behavior. D.S. yelled at him directly and shouted obscenities, telling him to "stay dead." Dr. O'Neal testified that

based on his review of D.S.'s charts and his own interaction with D.S., if D.S. left the hospital he would harm someone.

On cross-examination, D.S. elicited testimony from Dr. O'Neal from an October 19 medical chart note, describing D.S. as cooperative and calm.

D.S. testified. He apologized for his encounter with Dr. O'Neal before court and said he reacted as he did because he thought his case would be dismissed and he wanted to have his day in court. He explained his belief that "[t]he reason why I am being detained is because I have so much compassion for everybody in this land of human race." He also acknowledged assault charges. On cross-examination, D.S. acknowledged an incident on the bus involving police but claimed that he was simply sharing with people and the bus driver wrongly tried to remove him. D.S. admitted to problems with his wife, that they both called 911 on October 19, and that in response to the 911 operator's suggestion to separate himself from his wife, he did so.

On rebuttal, the State called Seattle Police Department Officer Bill Campbell who responded to the October 18 bus incident. He testified that when he contacted D.S., D.S. was sweating profusely, appeared agitated, and incoherently responded to questions. Campbell testified that he observed several bus passengers waiting to speak with law enforcement about the incident who "appeared upset."

The trial court found that D.S. suffered from a mental disorder that had a negative effect on his cognitive and volitional control, which affected D.S.'s

perception of events and impulse control. The trial court found that the impact of D.S.'s disorder on his perception was clear based on D.S.'s testimony of the bus incident, which the court did not find credible and found that people were frightened by what he said. It found that D.S.'s loud reaction before court that day evidenced how his misperceptions affected his ability to maintain impulse control. The court stated that though D.S. pulled himself back together for his court appearance, it worried about his "ability to hold it together for extended periods of time." It found that D.S. had an argument with his wife on October 19 and that his wife and police believed that "he was the one that presented the risk" and needed treatment. The trial court also cited D.S.'s reaction at the hospital and attempt to flip his gurney and bite staff.

It found that D.S.'s own testimony demonstrated that he presented a risk and required treatment. It found that while at the hospital, D.S. behaved aggressively toward staff and threatened them. It found that D.S. admitted in the hospital to past aggressive behavior. Also, it found that D.S. was verbally aggressive toward Dr. O'Neal at the day of the hearing. And because D.S. experienced an unpredictable inability to hold himself together at times, the trial court found that D.S. presented a threat to community safety.

The trial court concluded that D.S. presented a likelihood of serious harm to others and ordered his 14-day detention.[1]

---

[1] Mootness is not at issue because involuntary commitment orders have consequences for future commitment determinations. In re Det. of M.K., 168 Wn. App. 621, 625, 279 P.3d 897 (2012).

D.S. appeals.

## Analysis

We review a trial court's determination of involuntary commitment for psychological treatment to see if substantial evidence supports the court's findings and whether its findings support its legal conclusions.[2] "Substantial evidence is 'evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise.'"[3]

We review a trial court's interpretation of evidentiary rules de novo.[4] If the trial court correctly interprets the rule, we review the decision to admit evidence for an abuse of discretion, looking to see if the decision is manifestly unreasonable or rests on untenable grounds.[5] If the court rests its decision on facts unsupported in the record or applies the wrong legal standard, its decision rests on untenable grounds.[6] If a court does not adhere to a rule's requirements, we may consider this an abuse of discretion.[7]

D.S. claims that the trial court violated the best evidence rule and the hearsay rule when it admitted Dr. O'Neal's testimony. Because substantive evidence of D.S.'s recent history of physical aggression included Dr. O'Neal's recitation of D.S.'s actions at the hospital, including his attempt to flip his gurney

---

[2] In re Det. of A.S., 91 Wn. App. 146, 162-63, 955 P.2d 836 (1998).
[3] A.S., 91 Wn. App. at 162 (quoting Holland v. Boeing Co., 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)).
[4] State v. Griffin, 173 Wn.2d 467, 473, 268 P.3d 924 (2012).
[5] State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).
[6] Griffin, 173 Wn.2d at 473.
[7] Foxhoven, 161 Wn.2d at 174.

and bite the staff, he argues that the court's admission of that statement is prejudicial.

D.S. concedes that the Harborview records met the hearsay exception for medical records. But he contends that Dr. O'Neal's testimony about the content of the October 19 note describing D.S.'s attempt to flip the gurney and bite staff violated ER 1002's "best evidence rule" because the note had not been admitted. The State responds that D.S. did not object at the hearing on best evidence grounds and may not raise this objection for the first time on appeal. D.S. admits that he did not object at the trial court hearing on this basis but claims testimony about the record admitted as substantive evidence was error nevertheless.

When a party fails to object on particular grounds to testimony in the trial court, it may not raise those grounds for objection later on appeal.[8] At the hearing, D.S.'s counsel objected to Dr. O'Neal's challenged testimony about D.S.'s attempt to flip his gurney and bite Harborview hospital staff. He said, "[J]ust to object about the allegation that [D.S.] attempted to bite staff, I would ask for the witness to lay some—lack of foundation, objecting as to lack of foundation about that." The trial court admitted this as substantive evidence, finding that "the foundation for this medical record has been laid, and I think that's sufficient, too, for purposes of medical diagnosis and treatment." D.S. never objected to the admission of Dr. O'Neal's testimony about D.S.'s attempts to flip his gurney or bite staff on the basis of the best evidence rule or hearsay.

_____

[8] State v. Guloy, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985).

D.S. claims State v. Fricks[9] supports his evidentiary challenge despite his failure to make the asserted objection to the trial court. In Fricks, the State failed to produce a document, and the court held that a manager could not testify to the contents of a missing document when the best evidence rule required an "original writing be produced unless it can be shown to be unavailable."[10] The court continues that even if the writing in that case were available, it must otherwise be shown to be admissible through the business records exception to the hearsay requirement.[11] But that case does not address the issue of whether a party who fails to object on the basis of the best evidence rule may proceed and does not control.

A party's foundation objection in the trial court does not preserve for appeal a challenge based on best evidence or hearsay grounds. Because D.S. objected only on foundational grounds and does not appeal on that basis, we do not review the merits of this issue.[12]

D.S. challenges the sufficiency of the evidence to support the trial court's commitment order. D.S. also claims that the court used opinion evidence as substantive evidence in its findings, exceeding the scope for which the court may use opinion evidence.

---

[9] 91 Wn.2d 391, 588 P.2d 1328 (1979).
[10] Fricks, 91 Wn.2d at 397.
[11] Fricks, 91 Wn.2d at 397-98.
[12] Guloy, 104 Wn.2d at 422.

The State may not subject a person to involuntary commitment for the treatment of a mental disorder without the due process of law.[13] To do so, the trial court must find that a person, as a result of a mental disorder, must "(1) pose a substantial risk of harm to themselves, others, or the property of others, or (2) [be] gravely disabled."[14] Under RCW 71.05.240(3), the State must prove by a preponderance of the evidence that D.S. presented a likelihood of serious harm to others. RCW 71.05.020(25)(a) defines "likelihood of serious harm" as

> (a) A substantial risk that . . . (ii) physical harm will be inflicted by a person upon another, as evidenced by behavior which has caused such harm or which places another person or persons in reasonable fear of sustaining such harm; . . . or
> (b) The person has threatened the physical safety of another and has a history of one or more violent acts.

A court can base its findings, even entirely, on circumstantial evidence.[15]

We review the trial court record to see if a rational trier of fact could have found, by a preponderance of the evidence, that D.S. posed a substantial risk of harm to others as a result of his mental disorder. The trial court found that D.S. suffered from bipolar disorder type 1 and possibly an antisocial personality disorder that affect his perception of events and his impulse control. The trial court based this on the opinion and diagnosis of Dr. O'Neal, who briefly interacted with D.S. and reviewed hospital charts to determine that D.S. suffered from bipolar disorder and posed a risk to others. The court found from direct and circumstantial evidence that the October 18 incident on a city bus demonstrated

---

[13] In re Det. of LaBelle, 107 Wn.2d 196, 201, 728 P.2d 138 (1986).
[14] LaBelle, 107 Wn.2d at 201-02 (citing RCW 71.05.020(1)(3)).
[15] State v. Evans, 32 Wn.2d 278, 280, 201 P.2d 513 (1949).

D.S.'s inability to perceive events and control his impulses, as did the incident between D.S. and his wife, requiring him to be hospitalized. As evidence of the risk D.S. posed to others, the court cites that he was aggressive at the hospital, tried to flip his gurney and bite staff, and yelled obscenities at Dr. O'Neal before the court hearing.

D.S. claims that the court improperly relied on evidence admitted solely for opinion evidence purposes to form its findings. Courts may not rely on evidence admitted solely as opinion evidence but not admitted as substantive.[16]

D.S. cites the trial court's finding that D.S. and his wife argued, when the court admitted this as opinion and not substantive evidence. But the record shows that D.S. separated himself from his wife on October 19 and required hospitalization, which provided evidence for the court's conclusion that D.S. presented a risk to his wife. Omitting the evidence D.S. challenges, other unchallenged evidence sufficiently supports the court's finding.

D.S. also cites to the court's finding that D.S. self-reported a history of past aggressive behavior while at the hospital, when D.S. did not admit to this in his testimony, and the court admitted this evidence solely for the purpose of Dr. O'Neal's opinion. But D.S. did admit to an assault charge in his own testimony. Again, omitting the evidence from hospital records of past aggression, other unchallenged evidence sufficiently supports the court's finding.

---

[16] Allen v. Asbestos Corp., 138 Wn. App. 564, 579, 157 P.3d 406 (2007).

We have reviewed the record and conclude that it contains sufficient evidence to allow a reasonable finder of fact to find that D.S. suffers from a mental disorder causing him to pose a substantial risk of harm to others. This is true without Dr. O'Neal's testimony about D.S. flipping the gurney or biting staff.

## Conclusion

Because D.S. did not object in the trial court to Dr. O'Neal's challenged testimony on the grounds on which he appeals, we hold that he may not raise the issue on appeal. And because the record contains sufficient evidence to allow a reasonable fact finder to conclude that D.S. presented a serious risk of harm to others as a result of his mental disorder, we affirm.

Leach, J.

WE CONCUR: