**FILED**
**MARCH 21, 2023**
In the Office of the Clerk of Court
WA State Court of Appeals Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No.  38693-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL CURTIS COLLEY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Michael Colley appeals his conviction for possession of stolen property in the first degree, challenging the sufficiency of the evidence to establish that he possessed the stolen property *knowing* it was stolen.  The State presented evidence that Mr. Colley had possession of a valuable GPS[1] farming unit within less than two months of it being stolen, but we conclude that it presented insufficient corroborative evidence of other inculpatory circumstances to prove that essential knowledge element.  We reverse the judgment and remand with directions to dismiss the charge with prejudice.

---

[1] Global positioning system.

No. 38693-7-III
*State v. Colley*

FACTS AND PROCEDURAL BACKGROUND[2]

On September 27, 2021, the Adams County Sheriff's Office obtained a search warrant for Michael Colley's Honda Pilot. A deputy sighted the car and stopped it that day; Mr. Colley was the driver. He was taken into custody and his car was taken to the impound yard.

Keys on a lanyard in the Pilot's steering column included a key to storage unit 70 at the Othello Mini Storage facility. Sheriff's deputies obtained a second search warrant for unit 70 to look for evidence of stolen property and executed the warrant later that day. Among the items discovered and seized during the search of the unit was a John Deere Starfire 6000 GPS device and its antenna.[3] Together, the items had a market value of $11,000 to $11,500.

---

[2] The record on appeal includes a verbatim report of trial proceedings, which we cite as "RP," and a transcript of the conversations recorded on trial exhibits 18 and 19, which we cite as "RP (Exs. 18 and 19)."

[3] At Mr. Colley's jury trial, jurors asked during deliberations, "How did the officer know to search storage unit 70 after pulling him over and why a search warrant for the car?" Rep. of Proc. (RP) at 242. Jurors were only told, "You must decide this case only upon the evidence submitted in the trial." *Id.* at 244. The affidavit of probable cause reveals that an individual had told a sheriff's detective that Mr. Colley and another individual had been talking about GPS units from tractors approximately a month earlier. Specifically, they had talked about how expensive they were, "and that they could 'get one of those GPS, post it, and sell it.'" Clerk's Papers at 2. The informant surmised that any stolen parts would be in Mr. Colley's car or in his storage units. *Id.*

The State initially charged Mr. Colley with possession of stolen property in the first degree and trafficking in stolen property in the first degree. Shortly before trial, the information was amended to drop the trafficking charge.

The case proceeded to trial within two months of the initial charges. The State called as witnesses two of the investigating officers, Sergeant (Sgt.) Benjamin Buriak and Detective Corporal Cale Yount; Jed Pauley, the farmer from whom the GPS unit and antenna had been stolen; Pat Fluit, a farming equipment salesman for RDO Equipment; and a corrections officer from the Adams County Jail.

Sgt. Buriak testified that the GPS unit had been found in a box at the storage unit door, "Right in front as the door opened up it was sitting right there." Rep. of Proc. (RP) at 135. The box and its contents were admitted into evidence. The GPS unit was found packed in the box with bubble wrap around it. It was by cross-referencing the serial number on the GPS unit that officers determined it was stolen. The antenna that had been sold to Mr. Pauley with the GPS unit was found elsewhere in unit 70. Its exact location had not been logged.

Sgt. Buriak testified that a shipping label on the outside of the box in which the GPS unit was found described the box's contents as plastic bottles. The shipping label named the intended recipient as Michael Colley. It bore a New York State return address and a shipping date of September 14, 2021. It listed the weight of the package as 4

pounds, but Sgt. Buriak testified that, with the bubble-wrapped GPS unit inside, the box's weight was approximately 10 pounds. In cross-examination, Sgt. Buriak admitted that he did not investigate the shipping label's return address and did not know if it was associated with a reseller of goods. None of the items recovered from the storage unit were tested for fingerprints.

Pat Fluit testified that the GPS unit and antenna had been purchased from RDO Equipment by Mr. Pauley on March 31, 2021. Mr. Pauley had paid $11,395 plus tax and $1,345 plus tax, respectively, for the GPS unit and antenna.

Mr. Pauley testified that he had been a farmer in the area for more than 25 years. He confirmed that he had purchased the GPS unit and antenna from RDO Equipment. He testified that sometime in mid-July of 2021 he noticed that the GPS unit and antenna were missing from the tractor on which he had mounted them. At the time, the tractor was stored in his shop in Basin City. Mr. Pauley had contacted Mr. Fluit to tell him the equipment had been stolen and to inquire about receiving replacements. Mr. Pauley also told friends and some other farmers in the community about the theft. Mr. Pauley did not report the stolen equipment to law enforcement. Mr. Pauley did not know Mr. Colley or recognize him when he was pointed out at trial.

Detective Corporal Yount testified that he was familiar with the farming community in the Othello area through his experience as a deputy and local community

member and knew that Mr. Colley was not a farmer or member of the farming

community.

Corrections Sgt. Seth Henkel was the State's final witness. The State relied on

him to authenticate compact disk recordings of two calls made by Mr. Colley from the

Adams County Jail on October 7 and 8, 2021. They were admitted as exhibits 18 and 19,

respectively. Two excerpts from each call were played for the jury and were later

transcribed for our record.

The first portion of the October 7 call relied on by the State on appeal captured the

following:

> FEMALE: He said that like I guess the sheriffs told him that they are
> pretty much done with your storage. So, like you know, as far as he knows,
> the lock—the lock is back on it and, you know—
>
> MALE: Yeah.
>
> FEMALE: —if I ever want to get in there—
>
> MALE: Yeah.
>
> FEMALE: —if I wanted to get in there, he said that I would need to
> go get permission from Linda[4] and then—
>
> MALE: Well, she'll give it to you. I mean as long as, you know.
>
> FEMALE: Yeah, I know.

---

[4] In the prosecutor's opening statement, he told jurors that storage unit 70 "technically speaking . . . is rented by a woman named Linda Puente. But over the course of this trial you will learn that the defendant had unrestricted access to that unit." RP at 106. The only mention of Ms. Puente in the evidence were references to "Linda" in the recordings played for the jurors.

. . . .

MALE: When you get every—when you—when you get in there—

FEMALE: All right, no—

MALE: —you gotta get everything.

FEMALE:—I guess he said that—no, that's right. He said that Linda has to be, give permission because the storage is in her name.

MALE: Well then, it's her storage then. Anything that's found there is hers anyways, it's not mine. What's it gotta do with me? You know? That's the way I'm seeing it, right?

RP (Exs. 18 and 19) at 3-4.

The second portion of the October 7 call relied on by the State captured the following:

MALE: You want to go to Linda's and have you tell her—tell her to fucking open that shit up for you or what?

FEMALE: Yeah, I mean or I just was like trying to like make sure that your stuff wasn't like left open to get stolen.

MALE: Yeah.

. . . .

MALE: I mean I got tires in there. I got all kinds of shit in there, dude, like hella crazy ass random shit. You can sell every fucking thing in there that you want. Okay?

RP (Exs. 18 and 19) at 4-5.

The portion of the October 8 recording relied on by the State captured the following:

FEMALE: Well, it looks like she—

MALE: Right.

6

FEMALE: —ain't gonna give permission for shit, Michael. So,—

MALE: Well, fuck it then. Chop the shit off and go in there.

FEMALE: Oh yeah.

MALE: She didn't give you permission. Tell fucking Adrian that he needs to keep calling that bitch until she fucking wakes the fuck up or whatever.

FEMALE: You said keep calling Adrian until she gives permission?

MALE: Messaging her or whatever the fuck he's gotta do and say look, bitch, Michael needs to get the fuck out and if you ain't fucking doing shit about it, he's already given us permission to fucking get his shit out and get rid of it so he can fucking get out. You know?

. . . .

FEMALE: Has she already set up a time with Jonas about—when's that—what time is that then, ask her. She said she already set up a time with Jonas to get stuff out.

MALE: What stuff out, my stuff out?

FEMALE: Yeah, to get whatever I wanted out of there.

MALE: Oh, for you two?

FEMALE: Yeah, we're gonna get it all out though.

MALE: All right cool. Hell ya. Hey, everything is mine all the way into the back to the couch.

FEMALE: Jonas said he—

MALE: Hmm?

FEMALE: Everything is yours from what?

MALE: All the way from the front all the way to the back. There's a couch that's standing up. Everything behind the couch and all that shit is all hers and mine's from that forward.

FEMALE: From the couch forward, okay.

MALE: Yeah.

RP (Exs. 18 and 19) at 6-9.

After the State rested, Mr. Colley moved the court to dismiss the charge, arguing that the State failed to prove he acted with knowledge that the GPS unit and antenna were stolen. The court denied the motion. Mr. Colley did not testify.

The jury found Mr. Colley guilty. He appeals.

ANALYSIS

Mr. Colley's only challenge on appeal is to the sufficiency of the evidence. In a criminal prosecution, the State must provide sufficient evidence to prove each element of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When presented with a challenge to the sufficiency of the evidence, we determine whether, after viewing all the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All reasonable inferences from the evidence must be drawn in favor of the State and the evidence is interpreted most strongly against the defendant. *Id.*

Circumstantial evidence and direct evidence carry equal weight. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). Inferences based on circumstantial evidence must be reasonable, however; they cannot be based on speculation. *State v. Vasquez*, 178 Wn.2d 1, 16, 309 P.3d 318 (2013).

"A person is guilty of possessing stolen property in the first degree if he or she possesses stolen property . . . which exceeds five thousand dollars in value." RCW 9A.56.150(1). "Possessing stolen property" is defined to mean

> *knowingly* to receive, retain, possess, conceal, or dispose of stolen property *knowing* that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

RCW 9A.56.140(1) (emphasis added).

RCW 9A.08.010(1)(b) provides that a person knows or acts knowingly or with knowledge when he or she is aware of a fact or circumstance, or has information that would lead a reasonable person to believe that a fact exists. In *State v. Shipp*, 93 Wn.2d 510, 610 P.2d 1322 (1980), the Washington Supreme Court placed a limiting construction on the definition, holding that to be constitutional, criminal statutes that require knowing conduct require *subjective* knowledge. *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 555-56, 389 P.3d 731 (2017) (discussing *Shipp*). *Shipp* held that if evidence persuades a fact finder that a reasonable person would have known something, then the fact finder may infer a defendant's "knowledge" from that evidence as a matter of logical probability. *State v. Bryant*, 89 Wn. App. 857, 871, 950 P.2d 1004 (1998) (citing *Shipp*, 93 Wn.2d at 517). The fact finder "must still find subjective knowledge," however. *Shipp*, 93 Wn.2d at 517.

9

Mr. Colley's jailhouse phone calls laying claim to all of the items in unit 70

"[f]rom the couch forward," RP (Exs. 18 and 19) at 9, and Sgt. Buriak's testimony as to

where the GPS unit and antenna were located provide sufficient evidence that Mr. Colley

was knowingly in possession of the stolen property. Mr. Colley's challenge is to whether

the State presented sufficient evidence that he knew the items were stolen.

An individual's possession of recently stolen property increases the likelihood that

the possessor had guilty knowledge but is insufficient, standing alone, to prove he or she

knew the property was stolen. *State v. Terry*, No. 31094-9-III, slip op. (unpublished

portion) at 24 (Wash. Ct. App. June 19, 2014), https://www.courts.wa.gov/opinions

/pdf/310949.opn.pdf, (citing *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967)).

The jury may reasonably infer guilty knowledge where possession of recently stolen

property is coupled with "slight corroborative evidence of other inculpatory

circumstances tending to show guilt." *State v. Ford*, 33 Wn. App. 788, 790, 658 P.2d 36

(1983) (citing *Couet*, 71 Wn.2d at 775); *accord State v. Hatch*, 4 Wn. App. 691, 694-95,

483 P.2d 864 (1971). Corroborative evidence can include flight, the use of a fictitious

name, or the presence of the accused near the scene of the crime. *State v. Portee*, 25

Wn.2d 246, 254, 170 P.2d 326 (1946); *State v. Q.D.*, 102 Wn.2d 19, 28, 685 P.2d 557

(1984). It can also include damage to the property consistent with theft or giving a false

or improbable explanation for the possession. *Terry*, No. 31094-9-III, slip op.

(unpublished portion) at 24; *State v. Ladely*, 82 Wn.2d 172, 175, 509 P.2d 658 (1973);

*State v. Douglas*, 71 Wn.2d 303, 306-07, 428 P.2d 535 (1967). Evidence of secret or

hidden possession may also establish "'incriminating circumstances.'" *State v. Garske*,

74 Wn.2d 901, 903, 447 P.2d 167 (1968) (quoting *Portee*, 25 Wn.2d at 254); *accord*

*State v. McPhee*, 156 Wn. App. 44, 61, 230 P.3d 284 (2010).

Although this court held in *Ford* that the trial court could infer guilty knowledge

from the fact that the defendant "offered no explanation for his possession" of a stolen

vehicle, the opinion implies that the defendant provided a statement to police, making

that case an example of an *improbable* explanation, not a failure to explain. 33 Wn. App.

at 790. In *State v. Mace*, 97 Wn.2d 840, 844, 650 P.2d 217 (1982), our Supreme Court

held that for the State to rely on a defendant's failure to explain his possession at the time

of arrest or at trial "ignores [his] constitutional right to remain silent," and for the

prosecution to suggest that an unfavorable inference can be drawn from a defendant's

silence "violates due process." *Id.* (citing *Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240,

49 L. Ed. 2d 91 (1976); *State v. Fricks*, 91 Wn.2d 391, 588 P.2d 1328 (1979)). Courts

have also held that instructing jurors that they can infer guilty knowledge from a

defendant's unexplained possession of stolen property risks unconstitutionally shifting

the burden of proof. *E.g.*, *Commonwealth v. Burns*, 388 Mass. 178, 180-84, 445 N.E.2d

613 (Mass. 1983); *State v. Mohr*, 150 Ariz. 564, 567-68, 724 P.2d 1233 (1986).

The prosecutor made the following argument to the jury as to why it should find

that Mr. Colley knew the GPS unit was stolen:

> [W]e're not dealing with someone's TV or computer monitor. We're
> dealing with a highly specialized piece of farming equipment. The
> defendant's not a farmer. And he's certainly not a, you know,
> technologically sophisticated farmer that has an $11,000 piece of
> equipment. It's not something a non-farmer would have. It's very
> expensive. And, frankly, an expensive piece of property like that
> doesn't belong in a storage unit. It belongs on a 250-horsepower
> tractor. There's no reason for him to have that unit, no reason at all.

RP at 214-15. On appeal, the State makes additional arguments that the GPS unit was

"hidden" in the storage unit and that Mr. Colley made "inconsistent and bizarre"

statements about his ownership of items in the unit during the jailhouse calls. Br. of

Resp't at 16, 21.

We are unpersuaded that this evidence serves as inculpatory circumstances

corroborating guilty knowledge. As defense counsel argued to the jury, an eBay reseller

might find small used farming equipment to be profitable items to buy and sell. Given

that plausible reason why a nonfarmer might have the items, the facts that Mr. Colley is a

nonfarmer and had the items in a storage unit is not an inculpatory circumstance.

The GPS unit was not hidden in a way that is inculpatory where it was openly

visible within the storage unit, and one of the first items seen on entering. The State

conceded the storage unit was not even rented by Mr. Colley. Personal property having

12

No. 38693-7-III
*State v. Colley*

any value is more likely to be kept in a closed, secure place than out in the open. This is not what we have in mind when we speak of something being "hidden."

Mr. Colley's jailhouse calls all took place after law enforcement had searched unit 70 and seized the GPS unit and antenna. The State fails to explain what it is about Mr. Colley's exhortations to his female friend to sell property so he can make bail that suggests he knew the already-seized items had been stolen.

The State's evidence was insufficient to persuade a rational juror, beyond a reasonable doubt, that Mr. Colley knew the GPS unit and antenna were stolen. We reverse the judgment of conviction and remand with directions to dismiss the charge with prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____         _____
Fearing, J.                                              Staab, J.

13