[No. 34698-2-II.  Division Two.  July 17, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. FRANK C. MENDOZA, *Appellant*.

*Jodi R. Backlund* (of *Backlund & Mistry*), for appellant.

*H. Steward Menefee, Prosecuting Attorney*, and *Gerald R. Fuller, Deputy*, for respondent.

¶1  VAN DEREN, J. — Frank C. Mendoza appeals his convictions for second degree robbery and unlawful imprisonment, arguing that (1) the trial court erred by not determining his criminal history or calculating his offender score on the record, (2) the prosecutor committed misconduct by eliciting testimony about Mendoza's prior contacts with police, and (3) his counsel was ineffective. We affirm Mendoza's convictions but remand for resentencing, requiring the State to prove his criminal history by a preponderance of the evidence, without limiting the State to the record at the prior sentencing hearing.

## FACTS

¶2 On August 7, 2005, Lester A. Selin, age 84, encountered Mendoza on his way to a local convenience store. As he left the store, Selin realized that Mendoza was following him and, when he reached his driveway, Selin turned and asked Mendoza what he wanted. Mendoza responded, "I come . . . to shoot you and kill you. . . . You're a bad man." Report of Proceedings (RP) (Apr. 4, 2006) at 10. Selin believed that Mendoza had a gun because he kept his hand in his pocket.

¶3 Mendoza told Selin that he belonged to a drug cartel that would pay him a large sum of money for killing Selin. His girl friend had been "roughed up" while she was in jail, and he wanted to kill the Lester Selin that has a mole on his face. RP (Apr. 4, 2006) at 11. When Mendoza realized that Selin did not have a mole on his face, he acknowledged that he might have the wrong man. Mendoza had mistaken Lester Selin for Selin's son, also named Lester, who works as a corrections officer for the Grays Harbor Sheriff's Office.

¶4 Then Mendoza said, "I want money." RP (Apr. 4, 2006) at 12. Selin took $16 in cash from his wallet and gave it to Mendoza. Mendoza checked the name on Selin's Visa credit card inside the wallet. Apparently now satisfied that he did have the wrong Selin, Mendoza demanded a ride to a local tavern. Outside the tavern, Mendoza told Selin that if he called the police, he would come back and kill him.

¶5 Despite this threat, Selin contacted the police and officers viewed the surveillance video from the convenience store that showed Mendoza hanging around for about an hour before he encountered Selin. Officers also lifted a latent print matching Mendoza's thumbprint from the outside door handle of Selin's truck.

¶6 The police arrested Mendoza that day. Mendoza acknowledged that he was the individual in the video but denied any involvement with Selin. Selin was unable to identify Mendoza when officers showed him a photo array,

instead commenting that the hairstyle of a different individual was similar to his assailant's hair.

¶7 The State charged Mendoza with one count of second degree robbery and one count of second degree kidnapping. Later, the State filed notice that it intended to seek an exceptional sentence because Mendoza knew, or should have known, that Selin was particularly vulnerable and incapable of resistance.

¶8 During trial, Aberdeen Police Officer Steve Timmons testified that he was looking for Mendoza because there was "PC [probable cause] to arrest [Mendoza] for a separate charge, and also that he was a suspect in this case." RP (Apr. 4, 2006) at 103. Lieutenant Kevin Darst testified that he used a booking photograph of Mendoza from "sometime earlier when he was arrested a previous time" to compile a photo array for identification purposes. RP (Apr. 4, 2006) at 109. Corporal Darrin King testified that he knew Mendoza because of "several prior contacts," and Detective George Kelley testified that he was acquainted with Mendoza before August 7, 2005. RP (Apr. 4, 2006) at 111. Defense counsel did not object to any of this testimony or request curative instructions relating to it.

¶9 While cross-examining Kelley, Mendoza's counsel inadvertently elicited the fact that Mendoza was violating the law while at the convenience store because he had failed to register his current address with law enforcement. The trial court immediately directed Mendoza's counsel to rephrase the question, but Mendoza's counsel did not object to Kelley's answer or request a curative instruction.

¶10 The jury found Mendoza guilty of second degree robbery and the lesser included charge of unlawful imprisonment. The jury also returned a special verdict on both counts, finding that Selin was particularly vulnerable and that Mendoza knew, or should have known, that Selin was particularly vulnerable.

¶11 At sentencing, the State provided a statement of a prosecuting attorney that included the State's recitation of

the evidence at trial and a list of what the prosecutor believed was Mendoza's criminal history.[1] Mendoza did not object to the prosecutor's list of his prior criminal history. The trial court declined to impose an exceptional sentence. It sentenced Mendoza to concurrent terms of 84 months for second degree robbery and 60 months for unlawful imprisonment.

¶12 Mendoza appeals.

## ANALYSIS

PROVING CRIMINAL HISTORY — ACKNOWLEDGEMENT, WAIVER, SILENCE

¶13 Mendoza claims that the trial court erred by using only the prosecuting attorney's statement to determine his criminal history. The State responds that Mendoza is deemed to have acknowledged[2] the criminal history listed in the prosecutor's statement because he did not object at sentencing.

¶14 "We review de novo the sentencing court's calculation of the offender score." *State v. Rivers*, 130 Wn. App. 689, 699, 128 P.3d 608 (2005), *review denied*, 158 Wn.2d 1008 (2006), *cert. denied*, 127 S. Ct. 1882 (2007). "[I]llegal or erroneous sentences may be challenged for the first time on appeal." *State v. Ford*, 137 Wn.2d 472, 477, 973 P.2d 452 (1999). Although a defendant generally " 'cannot waive a challenge to a miscalculated

---

[1] The State filed supplemental clerk's papers that included this document.

[2] The State argues that the trial court was entitled to rely on the statement of the prosecuting attorney, which listed Mendoza's alleged prior history, pursuant to former RCW 9.94A.530 (2002). Former RCW 9.94A.530(2) provided:

In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or provided in a trial or at the time of sentencing. Acknowledgment includes *not objecting to information stated in the presentence reports*. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence.

(Emphasis added.)

offender score,' " he may waive his challenge if "the alleged error involves an agreement to *facts,* later disputed, or where the alleged error involves a matter of trial court discretion." *State v. Ross,* 152 Wn.2d 220, 231, 95 P.3d 1225 (2004) (quoting *In re Pers. Restraint of Goodwin,* 146 Wn.2d 861, 874, 50 P.3d 618 (2002)).

¶15 Mendoza claims that the trial court erred by failing to require evidence of his criminal history. On April 6, 2006, before sentencing, the State provided defense counsel and the trial court with the prosecutor's written statement containing a table listing Mendoza's prior convictions. The table included the crimes, sentencing courts, dates of crimes, and types of crimes. The State also listed its offender score calculation, its sentencing recommendation, and the costs to be imposed. The trial court determined that Mendoza had an offender score of 9, based solely on the prosecutor's statement. Mendoza did not object, but he also did not affirmatively acknowledge the factual basis of the prosecutor's statements. *See Ross,* 152 Wn.2d at 230 ("a defendant's *affirmative acknowledgement* that his prior . . . convictions are properly included in his offender score satisfies SRA [Sentencing Reform Act of 1981, chapter 9.94A RCW,] requirements").

¶16 On appeal, the State does not argue that this statement of a prosecuting attorney proved Mendoza's criminal history by a preponderance of the evidence. The State did not provide a certified copy of the judgment and sentence for any of Mendoza's convictions and did not offer any reason for failing to do so. *See Rivers,* 130 Wn. App. at 699.

¶17 Rather, the State argues that Mendoza waived his right to challenge the prosecutor's listing of his criminal history because he failed to object at sentencing. The State relies on RCW 9.94A.530 but offers no further argument or explanation other than postulating that Mendoza failed to object because he knew the history was correct. Mendoza contends that his silence does not equate to acknowledgement of the criminal history provided by the State.

¶18 In *Goodwin*, the State conceded that the trial court miscalculated Goodwin's offender score because his judgment and sentence were fundamentally defective. 146 Wn.2d at 867. The State argued, however, that Goodwin failed to show "a complete miscarriage of justice because he agreed to the criminal history stated in the plea agreement." *Goodwin*, 146 Wn.2d at 867. In addressing the State's argument that Goodwin waived the miscalculation of his offender score, our Supreme Court noted:

> This court recently held, in a case in which no negotiated plea agreement was involved, that a petitioner is unlawfully restrained "to the extent he [or she] was sentenced on the basis of an incorrect calculation of his [or her] offender score." *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997). This is because "[a] sentencing court acts without statutory authority . . . when it imposes a sentence based on a miscalculated offender score." [*Johnson*, 131 Wn.2d at 568.] Moreover, a sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice. *Johnson*, 131 Wn.2d at 569. This is true even where the sentence imposed is actually within the correct standard range.

*Goodwin*, 146 Wn.2d at 867-68 (some alterations in original) (footnote omitted).

¶19 Also in *Goodwin*, the court overruled its prior decisions "that, depending upon the circumstances, a defendant can waive any challenge to a miscalculated offender score by agreeing to that score (or to criminal history on which the score is based) in a plea agreement or by other stipulation." 146 Wn.2d at 873. It held:

> In keeping with long-established precedent, we adhere to the principles that a sentence in excess of statutory authority . . . is excessive if based upon a miscalculated offender score (miscalculated upward), and that a defendant cannot agree to punishment in excess of that which the [l]egislature has established. Accordingly, we hold that in general a defendant cannot waive a challenge to a miscalculated offender score. There are limitations on this holding. While waiver does not apply where the

alleged sentencing error is a *legal error* leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion.

*Goodwin*, 146 Wn.2d at 873-74.

¶20 *Goodwin*'s discussion of *State v. Majors*, 94 Wn.2d 354, 616 P.2d 1237 (1980), is instructive to determine whether waiver occurs in a particular circumstance:

> In *Majors*, the defendant pleaded guilty to reduced charges and agreed to being a habitual offender based on a supplemental information alleging two prior convictions, in hopes of obtaining a shorter sentence under the habitual offender statute. On appeal, the defendant argued that his sentence was erroneous, arguing that the supplemental information was defective because one of the convictions did not precede the current offense, as required for habitual offender status. This court concluded: "We see no reason why a defendant who agrees to be designated a habitual criminal should not be held to his bargain under the circumstances here presented, when he undisputedly was aware of the consequences of his waiver and there was plainly a factual basis for the plea." The court said the error was a technical defect, reasoning that defendant was collaterally attacking the sufficiency of the supplemental information where he had clearly not been misled as to the charges; the court observed that in the federal system collateral attacks on the sufficiency of charging instruments were generally not permitted except in exceptional circumstances. *Majors* thus involved a stipulation to facts constituting an element of the charge, unlike an agreement that prior history includes certain convictions for purposes of sentencing. *Majors* thus highlights the distinction between a stipulation based on erroneous facts and one involving a stipulation or agreement to a sentence that legally exceeds statutory authority of the sentencing court.

*Goodwin*, 146 Wn.2d at 874-75 (citations omitted) (quoting *Majors*, 94 Wn.2d at 358); *see also In re Pers. Restraint of Shale*, 160 Wn.2d 489, 494, 158 P.3d 588 (2007) (noting the *Goodwin* court clarified that "waiver *can be found* where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion").

¶21 *Ross* further explained the holding of *Goodwin*, emphasizing that an appellant cannot waive a challenge to a miscalculated offender score where the alleged sentencing error is a legal error, but that the appellant may waive a challenge to a factual error or issue of trial court discretion if the appellant affirmatively acknowledges the prior convictions at trial. 152 Wn.2d at 230-31. If the appellant has acknowledged the prior convictions, "[t]o invoke the waiver analysis set forth in *Goodwin*, a defendant must first show on appeal . . . that an error of fact or law exists within the four corners of his judgment and sentence." *Ross*, 152 Wn.2d at 231. The defendant in *Ross*, unlike Mendoza, affirmatively acknowledged the existence and comparability of his out-of-state convictions. Thus, our Supreme Court held that further proof of the out-of-state convictions was unnecessary and that the defendant waived his challenge to a miscalculated offender score. *Ross*, 152 Wn.2d at 233.

¶22 An offender score is "based on [the defendant's] prior convictions and the level of seriousness of the current offense." *Ross*, 152 Wn.2d at 229. The State must prove a defendant's criminal history by a preponderance of the evidence. *Ford*, 137 Wn.2d at 479-80 (citing RCW 9.94A.110). "[T]he trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2).

> To establish the existence of a [previous] conviction, a certified copy of the judgment and sentence is the best evidence. The State may introduce other comparable evidence only if it shows that the writing is unavailable for some reason other than the serious fault of the proponent. In that case, comparable documents of record or trial transcripts may suffice.

*Rivers*, 130 Wn. App. at 698-99 (footnotes omitted).

¶23 RCW 9.94A.530(2) provides that failure to object to "information stated in the presentence reports" constitutes acknowledgement. Presentence reports are documents prepared by the Department of Corrections (DOC) at the trial

court's request under RCW 9.94A.500. The DOC did not file a presentence report in this case. The State appears to contend that the statement of prosecuting attorney constitutes a presentence report, but it offers no support for this presumption. Mendoza claims that he could not have acknowledged the criminal history because the statement of prosecuting attorney does not constitute a presentence report.

¶24 Mendoza cites *Ford* to support his contention that the statement of a prosecuting attorney constitutes only bare assertions, unsupported by evidence.

> The State does not meet its burden through bare assertions, unsupported by evidence. Nor does failure to object to such assertions relieve the State of its evidentiary obligations. To conclude otherwise would not only obviate the plain requirements of the SRA but would result in an unconstitutional shifting of the burden of proof to the defendant.

*Ford*, 137 Wn.2d at 482.

¶25 Without citation to any additional authority in either its brief or at oral argument, the State's argument is essentially that a defendant's failure to object to a list of prior convictions constitutes waiver of any objection because the defendant is deemed to have acknowledged the convictions. We disagree with the dissent that the bare assertions contained in the prosecutor's statement constitute a presentence report within the contemplation of RCW 9.94A.500.

¶26 Our Supreme Court has made clear that " '[t]he best evidence of a prior conviction is a certified copy of the judgment' " and that "[t]he State may introduce other comparable evidence only if it is shown that the [certified copy] is unavailable for some reason other than the serious fault of the proponent." *State v. Lopez*, 147 Wn.2d 515, 519, 55 P.3d 607 (2002) (quoting *Ford*, 137 Wn.2d at 480). The origin of this sentencing rule began with *State v. Fricks*, 91 Wn.2d 391, 588 P.2d 1328 (1979). Following a robbery, the State sought to prove the contents of a gas station's daily

receipt tally sheets. *Fricks*, 91 Wn.2d at 397. Our Supreme Court stated:

> In seeking to prove the contents of the tally sheet, the State must comply with the so-called Best Evidence Rule. This basic principle of evidence generally requires that "the best possible evidence be produced." *Larson v. A.W. Larson Constr. Co.*, 36 Wn.2d 271, 217 P.2d 789 (1950). As applied to proof of the terms of a writing, it requires that the original writing be produced unless it can be shown to be unavailable "for some reason other than the serious fault of the proponent." *[McCormick's] Handbook of the Law of Evidence* § 230, at 560 ([Edward W. Cleary ed.,] 2d ed. 1972).

*Fricks*, 91 Wn.2d at 397. Because the State did not produce the document or provide any reason for its unavailability, our Supreme Court did not allow the manager's testimony to prove the monetary loss. *Fricks*, 91 Wn.2d at 398.

¶27 Our Supreme Court has also addressed waiver and the burden of proof relating to criminal history in *Ford*, 137 Wn.2d at 478-79. Ford challenged the trial court's inclusion of foreign convictions in his sentencing score because the State failed to prove that the convictions were felonies under comparable Washington law. *Ford*, 137 Wn.2d at 476. Our Supreme Court rejected the Court of Appeals' decision that Ford had waived any objection to his alleged criminal history by failing to object during the sentencing hearing. *Ford*, 137 Wn.2d at 475. Our Supreme Court first addressed the State's burden of proof, making it clear that

> the use of a prior conviction as a basis for sentencing under the SRA is constitutionally permissible if the State proves the existence of the prior conviction by a preponderance of the evidence. *See* [former] RCW 9.94A.110 [(1999)] . . . .[3]

> The best evidence of a prior conviction is a certified copy of the judgment. However, the State may introduce other compa-

---

[3] Former RCW 9.94A.110 provided: "[T]he court shall, at the time of plea or conviction, order the department to complete a presentence report before imposing a sentence upon a defendant who has been convicted of a felony sexual offense." Further, "[i]f the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist." Laws of 2001, ch. 10, § 6 recodified RCW 9.94A.110 as RCW 9.94A.500.

rable *documents of record or transcripts of prior proceedings* to establish criminal history. . . .

The above underscores the nature of the State's burden under the SRA. It is not overly difficult to meet. The State must introduce *evidence* of some kind to support the alleged criminal history. . . . The SRA expressly places this burden on the State because it is "inconsistent with the principles underlying our system of justice to sentence a person on the basis of crimes that the State either could not or chose not to prove." *In re Personal Restraint of Williams*, 111 Wn.2d 353, 357, 759 P.2d 436 (1988).

Thus, contrary to the State's position, it is the State, not the defendant, which bears the ultimate burden of ensuring the record supports the existence and classification of out-of-state convictions. Absent a sufficient record, the sentencing court is without the necessary evidence to reach a proper decision, and it is impossible to determine whether the convictions are properly included in the offender score.

. . . .

. . . [F]undamental principles of due process prohibit a criminal defendant from being sentenced on the basis of information which is false, lacks a minimum indicia of reliability, or is unsupported in the record.

Information relied upon at sentencing "is false or unreliable if it lacks some minimal indicium of reliability *beyond mere allegation*." *United States v. Ibarra*, 737 F.2d 825, 827 (9th Cir. 1984) [(internal quotation marks omitted)]."

. . . .

. . . *The State does not meet its burden through bare assertions, unsupported by the evidence.*

*Ford*, 137 Wn.2d at 479-82 (some emphasis added) (citations omitted).

¶28 The *Ford* court then addressed acknowledgment as it relates to prior criminal history:

We also reject the State's argument that Ford "acknowledged" the classification of the California convictions by failing to specifically take issue with the State's position at sentencing. Under the SRA, acknowledgement allows the judge to rely

on unchallenged *facts and information* introduced for the purposes of sentencing. *See* [former] RCW 9.94A.370(2) [(1999)][4]. . . . *Acknowledgment does not encompass bare assertions by the State unsupported by the evidence.*

*Ford*, 137 Wn.2d at 482-83 (emphasis added). The Supreme Court further noted, "[n]ot being a witness, a prosecutor's assertions are neither fact nor evidence, but merely argument." *Ford*, 137 Wn.2d at 483 n.3.

¶29 And, in 1994, Division One of this court clearly required the State to prove prior convictions by use of more than the prosecutor's statement. "While the best evidence of a prior conviction is a certified copy of the judgment, the State may introduce documents of record or transcripts of prior proceedings to establish the defendant's criminal history." *State v. Cabrera*, 73 Wn. App. 165, 168, 868 P.2d 179 (1994) (citation omitted). Nothing in this language suggests that a prosecutor's argument contained in a filed report to the trial court may be substituted for documentary support of any claimed criminal history.

¶30 Yet, in 2002, the State argued that it did not have to provide supporting evidence of prior convictions in *Lopez*, 147 Wn.2d at 520. Our Supreme Court reiterated the rules from *Fricks* and *Ford* in reversing the trial court's reliance on the State's mere allegations of prior convictions:

"The best evidence of a prior conviction is a certified copy of the judgment." . . . *Ford*, 137 Wn.2d [at] 480 . . . . The State may introduce other comparable evidence only if it is shown that the writing is unavailable for some reason other than the serious fault of the proponent. . . . *Fricks*, 91 Wn.2d [at] 397.

. . . [T]he State . . . alleged prior convictions for delivery of controlled substances and second degree assault, but failed to provide any supporting evidence. Thus, the sentencing court erred when it considered these unproved convictions.

---

4 Former RCW 9.94A.370(2) provided: "In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgment includes not objecting to information stated in the presentence reports." Laws of 2001, ch. 10, § 6 recodified RCW 9.94A.370 as RCW 9.94A.530.

*Lopez*, 147 Wn.2d at 519-20 (footnote and citation omitted). Thus, our Supreme Court has made it clear that in order to prove criminal history, the State must provide a certified copy of the judgment and may introduce other comparable evidence only if the certified copy is unavailable through no fault of the State. Here, the State did not do so.

¶31 In order to clarify that the State may not rely on Criminal Rule (CrR) 7.1(c) and (d) to allow the prosecutor to merely list what the State believes is the applicable criminal history in order to satisfy its burden to prove criminal history, we provide the following analysis. CrR 7.1(a) grants authority to a *trial court* to order a presentence report from the DOC. CrR 7.1(b) describes the appropriate content for the DOC generated reports. CrR 7.1(c) allows either party to inform the opposing party and the trial court of any new evidence that will controvert the *presentence report*.[5] CrR 7.1(d) provides, "[a]ny interested person, as designated in RCW 9.94A.500 may submit a report separate from that furnished by the Department of Corrections." RCW 9.94A.500(1) provides in relevant part:

> The court shall consider the risk assessment report and presentence reports, if any, including any victim impact statement and criminal history, and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed.
>
> If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist. All of this information shall be part of the record. . . . Court clerks shall provide, without charge, certified copies of documents relating to criminal convictions requested by prosecuting attorneys.

¶32 We find no authority in CrR 7.1, or elsewhere, stating that a document generated by a prosecutor contain-

---

[5] "At least 3 days before the sentencing hearing, defense counsel and the prosecuting attorney shall notify opposing counsel and the court of any part of the presentence report that will be controverted by the production of evidence." CrR 7.1(c).

ing a list of a defendant's previous convictions may be used to prove criminal history. We find no authority providing that anything other than a document ordered by the trial court from the DOC can constitute a "presentence report." As discussed above, our Supreme Court has already answered this question by holding that "a prosecutor's assertions are neither fact nor evidence, but merely argument." *Ford*, 137 Wn.2d at 483 n.3. Furthermore, our Supreme Court has repeatedly held that a certified copy of the judgment is the best evidence of a prior conviction and that "[t]he State may introduce other comparable evidence *only if it is shown that the writing is unavailable for some reason other than the serious fault of the proponent.*" *Lopez*, 147 Wn.2d at 519 (emphasis added); *see also Ford*, 137 Wn.2d at 480; *Fricks*, 91 Wn.2d at 397.

¶33 For clarification, we note that our holding is limited solely to proof of prior convictions for the purpose of calculating offender scores and not to the other types of evidence that a trial court can consider during sentencing. CrR 7.1 and RCW 9.94A.500 provide that the trial court can allow argument from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer, as well as the submission of documents other than those provided by the DOC. But neither allows these arguments to supplant the State's burden to prove criminal history by a preponderance of the evidence by submitting certified copies of judgments and sentences or other record evidence upon a showing that the judgment and sentence is not available through no fault of the State.

¶34 Recognizing this distinction, we note that language from other decisions has led to some confusion about the trial court's use of information to prove criminal history at sentencing. Although each case addresses some form of acknowledgment or waiver at sentencing, no case has held that failure to object to a prior conviction constitutes waiver. We address the oft-cited cases chronologically.

¶35 In *State v. Ammons*, 105 Wn.2d 175, 183, 713 P.2d 719, 718 P.2d 796 (1986), a case consolidating several challenges to the SRA and its application, Ammons pleaded guilty and, on appeal, challenged former RCW 9.94A.100 (1981) and former RCW 9.94A.370 (1985),[6] claiming that they violated his Fifth Amendment right against self-incrimination.[7] Former RCW 9.94A.100[8] required a defendant who entered a guilty plea to disclose any prior convictions. *Ammons*, 105 Wn.2d at 183. Former RCW 9.94A.370 required the defendant to challenge any information contained in presentence reports or face waiver. To prove the previous convictions, the State had to provide certified copies of Ammons' four previous convictions, which it did. *Ammons*, 105 Wn.2d at 177. Our Supreme Court held that both provisions withstood the constitutional challenge and clarified:

> [Former] RCW 9.94A.370 does not compel a defendant to provide any information. The defendant has the right to know of and object to adverse *facts* in the presentence reports. If he contests any *facts,* an evidentiary hearing must be held before they are used.

*Ammons*, 105 Wn.2d at 185 (emphasis added).

¶36 In *State v. Herzog*, 112 Wn.2d 419, 421-22, 771 P.2d 739 (1989), upon remand, the trial court sentenced Herzog to a standard range sentence based on an offender score of 0, even though it had a translated copy of the findings and judgment from a West German rape conviction that was constitutionally invalid. Division One of our court certified to our Supreme Court the question to of whether the trial

---

[6] Former RCW 9.94A.370 (1985) mirrors former RCW 9.94A.370 (1999) as discussed in note 4.

[7] Our federal constitution provides in relevant part: "nor shall [the person] be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.

[8] Former RCW 9.94A.100 provided: "The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement. All disputed issues as to criminal history shall be decided at the sentencing hearing." Laws of 2001, ch. 10, § 6 recodified RCW 9.94A.100 at RCW 9.94A.441.

court erred in considering the *facts* alleged underlying the West German conviction. *Herzog*, 112 Wn.2d at 420. Our Supreme Court held that because the defendant did not object to the *facts* underlying the conviction in West Germany, the trial court did not err in relying on them for sentencing. *Herzog*, 112 Wn.2d at 432.

¶37 Four cases have dealt with whether a defendant may remain silent at sentencing when the trial court is asked to consider facts or information outside the record for imposition of an exceptional sentence: *State v. Handley*, 115 Wn.2d 275, 796 P.2d 1266 (1990); *State v. Blunt*, 118 Wn. App. 1, 71 P.3d 657 (2003); *State v. Zatkovich,*, 113 Wn. App. 70, 52 P.3d 36 (2002); and *State v. Morreira*, 107 Wn. App. 450, 27 P.3d 639 (2001).[9] All four cases involve a guilty plea by the defendant and the imposition of an exceptional or enhanced sentence based on information, other than certified copies of judgments and sentences, the trial court considered at sentencing.

¶38 In *Blunt*, the defendant argued that the State had not proved his three prior DUI (driving under the influence) convictions, even though the State submitted copies of the judgment of conviction and sentencing order from Oregon, the judgment and sentence from Lewis County District Court, and a " 'Lewis County District Court Docket' computer printout" showing that Blunt had pleaded to and had been found guilty of a third DUI. *Blunt*, 118 Wn. App. at 5. Because it lacked an actual copy of the third conviction, the State also called the Lewis County District Court administrator to testify that the county destroyed court files for cases after five years; the county retains the docket for reference purposes by the court; the docket used for sentencing accorded with the way its dockets appear; and the docket contained Blunt's birth date, driver's license num-

---

[9] *Morreira* is not helpful to our analysis because it deals with a second remand for the trial court to consider the facts relating only to the charged offense, second degree assault, and not the facts from the Washington State Patrol investigative report and the community corrections officer's testimony contained in the presentence investigation report.

ber, height, weight, and eye and hair color. *Blunt*, 118 Wn. App. at 5. Citing *Ford*, we upheld Blunt's sentencing enhancement based on three prior DUIs because the State's information—copies of judgments and sentence documents and live testimony on the conviction in which the judgment and sentence has been destroyed—bore " 'minimum indicia of reliability' " and was not challenged. *Blunt*, 118 Wn. App. at 8 (quoting *Ford,* 137 Wn.2d at 481). But here, unlike in *Blunt*, the State failed to provide copies of judgment and sentence documents and failed to provide a reason for its failure to do so.

¶39 Handley, Zatkovich, and Morreira appealed exceptional sentences based on the trial courts' consideration of facts underlying their previous crimes. In *Handley*, the trial court's exceptional sentence for the robbery and murder of an elderly woman was based on its consideration of "statements made by defendant and his attorney during sentencing, presentence reports from the State and defense counsel, defendant's statement on his plea of guilty, statements made by defendant and his codefendants soon after the crime, an autopsy report, and testimony from the medical examiner who conducted the victim's autopsy." *Handley*, 115 Wn.2d at 278.

¶40 Handley "objected to the trial court's consideration of some information in the . . . presentencing report, the out-of-court statements made by him and his codefendants, and the autopsy report." *Handley*, 115 Wn.2d at 278-79. In upholding the trial court's reliance on other sources of information at sentencing, the Supreme Court distinguished use of information for imposition of an exceptional sentence from a trial court's determination of criminal history:

> *Unlike criminal history, the particular circumstances surrounding a crime* are not factored into the calculation of the standard range. Yet, . . . it is exactly *those unique circumstances* which determine the appropriateness of an exceptional sentence. . . .
>
> Furthermore, the defendant is protected from consideration of unreliable or inaccurate information because when "the

defendant disputes *material facts*, the court must either not consider the *fact* or grant an evidentiary hearing on the point." [Former] RCW 9.94A.370(2). This procedure safeguards the defendant's right to know and object to adverse *facts*. If the defendant does not exercise this right, the *facts* are deemed acknowledged for purposes of the sentencing judge's consideration.

*Handley*, 115 Wn.2d at 282 (emphasis added) (citations omitted).

¶41 Our Supreme Court affirmed the exceptional sentence, finding these facts sufficient for the trial court to establish that Handley was in a position of trust with the victim and that his failure to object to the information the trial court relied on to justify the exceptional sentence constituted acknowledgment. *Handley*, 115 Wn.2d at 284. The *Handley* court's decision does not suggest or support the argument that a defendant's silence regarding his *criminal history* following a trial constitutes acknowledgment, as the State urges.

¶42 In *Zatkovich*, the trial court's reliance on facts in a stipulated presentence report about the "facts demonstrating Zatkovich's ongoing pattern of domestic, emotional, and physical abuse of the victim and his violence toward her in front of their minor children" was sufficient to justify an exceptional sentence. *Zatkovich*, 113 Wn. App. at 81. In *Zatkovich*, the trial court did not rely solely on a prosecutor's argument to determine the defendant's criminal history and to calculate his offender score.

¶43 Here, the State did not produce certified copies of any judgment or sentence showing Mendoza's alleged criminal history and also failed to provide a reason for this omission. The State relied solely on the argumentative statement of the prosecuting attorney. Thus, the State failed to prove Mendoza's criminal history by a preponderance of the evidence or that Mendoza waived any challenge to the criminal history. As such, the trial court lacked statutory authority to calculate Mendoza's offender score based on convictions the State failed to prove. Accordingly,

Mendoza's sentence, based upon an incorrect offender score, is defective and we remand for resentencing requiring the State to prove Mendoza's criminal history by a preponderance of evidence.

¶44 In doing so, the State may introduce certified copies of judgment and sentence documents relating to Mendoza's prior criminal history. It is not held to the existing record. Our Supreme Court has held that "remand for an evidentiary hearing is appropriate only when the defendant has failed to specifically object to the State's evidence of the existence or classification of a prior conviction." *Lopez*, 147 Wn.2d at 520. Here, Mendoza failed to object to the State's alleged evidence of his criminal history. Accordingly, we hold that the State is entitled to an evidentiary hearing so that it may produce certified copies of Mendoza's criminal history.

¶45 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON, C.J., concurs.

¶46 QUINN-BRINTNALL, J. (concurring in part and dissenting in part) — I concur with the majority regarding prosecutorial misconduct and ineffective assistance of counsel. But I disagree with the majority's holding regarding the sentencing issue.

¶47 I believe the majority mischaracterizes the prosecuting attorney's criminal history statement as something other than a presentence report. The criminal history is a presentence report and, as such, Frank C. Mendoza was required to object to it before sentencing to preserve this challenge for review. RCW 9.94A.530(2); *State v. Garza*, 123 Wn.2d 885, 890, 872 P.2d 1087 (1994); *State v. Handley*, 115 Wn.2d 275, 283-84, 796 P.2d 1266 (1990).

¶48 CrR 7.1(a) grants a trial court authority to order "a risk assessment or presentence investigation and report be

prepared by the Department of Corrections [(DOC)], when authorized by law." And CrR 7.1(d) contemplates other reports, allowing "[a]ny interested person, as designated in RCW 9.94A.500 [to] submit a report separate from that furnished by the [DOC]."

¶49 Former RCW 9.94A.500 (2000), in turn, grants authority for several reports: (1) a risk assessment report completed by DOC, (2) a chemical dependency screening report prepared by DOC, (3) a "presentence report" for defendants convicted of a felony sexual offense prepared by DOC, (4) a "presentence report" for mentally ill defendants prepared by DOC, and (5) a victim impact statement. The statute goes on to say:

> The court shall consider the risk assessment report *and presentence reports, if any, including any victim impact statement and criminal history,* and allow arguments from the prosecutor, the defense counsel, the offender, the victim, the survivor of the victim, or a representative of the victim or survivor, and an investigative law enforcement officer as to the sentence to be imposed.

Former RCW 9.94A.500(1) (emphasis added).

¶50 The emphasized language above means that the term "presentence report" has a wider definition than that used by the majority. It includes a victim impact statement, a document that is not prepared by DOC. Crucially, the term includes criminal history. No law requires that a defendant's criminal history be prepared by the DOC.[10] Indeed, presentence reports of criminal history are typically prepared by the prosecutor or defense attorney and the DOC is called upon to author such reports, causing much delay, only in more serious cases or special circumstances such as the presence of mental illness or a felony sexual offense.

¶51 The majority here holds that an offender acknowledges prior convictions only if he fails to object to a

---

[10] If, conversely, DOC does prepare a presentence report, it should include criminal history. *See* CrR 7.1(b).

presentencing report that is prepared by the DOC, rather than an attorney. I disagree and would accordingly affirm on all grounds.

Review granted at 163 Wn.2d 1017 (2008).