

FILED
COURT OF APPEALS DIV 1
STATE OF WASHINGTON

2014 JAN 21 PM 1: 18

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 67558-3-I |
| Respondent, | |
| v. | DIVISION ONE |
| OLIVER W. WEAVER, JR., | UNPUBLISHED OPINION |
| Appellant. | FILED: January 21, 2014 |

LEACH, C.J. — Oliver Weaver appeals his resentencing for rape in the second degree[1] and rape of a child in the second degree,[2] which followed two decisions from this court and two remands from the Washington Supreme Court. Weaver appeals his judgment and sentence as not reflecting the trial court's finding that his convictions violate the prohibition against double jeopardy. The State cross appeals, challenging the trial court's determination that the two convictions put Weaver in double jeopardy. Weaver also contends that the trial court lacked authority to impose an exceptional sentence and that certain of the court's instructions concerning the special verdict violated his rights to due process and a unanimous jury verdict. Weaver challenges his offender score, arguing that the State failed to meet its burden of proving his criminal history. And in a statement of additional grounds, Weaver raises further challenges to his

---

[1] RCW 9A.44.050(1)(a).
[2] RCW 9A.44.076.

sentence and various factual allegations. We hold that in light of the Washington Supreme Court's recent decision in State v. Smith,[3] Weaver's convictions for both rape in the second degree and rape of a child in the second degree did not put him in double jeopardy. Because Weaver could have challenged his exceptional sentence in his first appeal but did not, we decline to address this claim here. We hold that Weaver's challenges to the trial court's special verdict instructions and the allegations in his statement of additional grounds have no merit. And because the State adequately proved Weaver's prior misdemeanor convictions at resentencing, we affirm the trial court's determination of Weaver's offender score for sentencing purposes. We reverse the trial court's double jeopardy determination, otherwise affirm, and remand for further proceedings consistent with this opinion.

Background and Procedural History

In early December 2002, appellant Oliver Weaver violently raped 13-year-old R.T., whom he had employed since October 2002 to wash cars at his used car lot and clean his house.[4] R.T. was fearful because Weaver threatened her. By the time she told a friend what had happened, she was at least 11 weeks pregnant. On the advice of her mother and her doctor, she had an abortion.[5]

---

[3] 177 Wn.2d 533, 303 P.3d 1047 (2013).
[4] State v. Weaver, 140 Wn. App. 349, 351, 166 P.3d 761 (2007), rev'd, 171 Wn.2d 256, 251 P.3d 876 (2011).
[5] Weaver, 140 Wn. App. at 351.

DNA (deoxyribonucleic acid) testing of fetal tissue indicated a 1 in 240 million probability that Weaver was not the father.[6]

The State charged Weaver with one count of rape in the second degree and one count of rape of a child in the second degree. The State sought an exceptional sentence based on the aggravating circumstance that the offense resulted in the pregnancy of a child victim of rape. After trial in February 2005, a jury found Weaver guilty as charged, also finding the aggravating circumstance by special verdict.

For sentencing purposes, the court treated the two convictions as the same criminal conduct and calculated Weaver's offender score as two, based upon his two prior second degree burglary convictions.[7] Weaver was subject to indeterminate sentencing under former RCW 9.94A.712 (2001). On both counts, the court imposed an exceptional sentence with a minimum term of 250 months and a maximum sentence of life.[8]

In his first appeal to this court, Weaver contended that (1) the trial court denied him his right to counsel and due process by denying his motions to substitute counsel and for a continuance, (2) the trial court lacked authority to impose an exceptional sentence, and (3) the State failed to meet its burden of proving his offender score. In his reply brief, Weaver abandoned his second

---

[6] Weaver, 140 Wn. App. at 351-52.
[7] The burglaries were from 1981 and 1985. The misdemeanor convictions occurred between 1987 and 1996.
[8] The terms were to run concurrently.

issue, conceding the court's authority under former RCW 9.94A.712 to impose an exceptional sentence.

In the published portion of our opinion, we addressed his challenge to his offender score.[9] We held that the State's presentence statement of criminal history, to which Weaver did not object, was sufficient under the requirements of former RCW 9.94A.500 (2000) for "presentence reports" to prove his prior misdemeanors and thus prevent the burglary convictions from washing out.[10] In taking this position, we explicitly disagreed with Division Two's decision in State v. Mendoza.[11] In that case, the trial court used only the prosecutor's statement of Mendoza's prior convictions, to which Mendoza did not object, to determine his criminal history.[12] Division Two remanded for resentencing because "[t]he State relied solely on the argumentative statement of the prosecuting attorney [and] failed to prove Mendoza's criminal history by a preponderance of the evidence or that Mendoza waived any challenge to the criminal history."[13] By contrast, we held in our first Weaver decision that the State's presentence statement was sufficient to establish prior criminal history and that Weaver acknowledged his criminal history by failing to object. We affirmed Weaver's convictions.[14]

---

[9] Weaver, 140 Wn. App. at 351-57. In the unpublished portion of our opinion, we rejected Weaver's claims regarding his motions to substitute counsel and for a continuance.

[10] Weaver, 140 Wn. App. at 352, 355-57.

[11] 139 Wn. App. 693, 162 P.3d 439 (2007).

[12] Mendoza, 139 Wn. App. at 697-98.

[13] Mendoza, 139 Wn. App. at 712-13.

[14] Weaver, 140 Wn. App. at 356-57.

Weaver filed a petition for review. In April 2009, the Washington Supreme Court affirmed Mendoza.[15] In July, the court granted Weaver's petition "only on the offender score issue" and remanded to this court "for reconsideration in light of State v. Mendoza."[16] In an unpublished opinion,[17] we again affirmed Weaver's convictions, reasoning that "[t]he Department of Corrections criminal history report was before the court and was not objected to." We declined to address Weaver's new argument alleging a double jeopardy violation.[18]

Weaver again petitioned for review, which the Washington Supreme Court granted. "Because Mendoza clearly entitles Weaver to relief," the court reversed our decision and remanded to the superior court.[19] The court noted that Weaver never appeared for a scheduled interview with the Department of Corrections, and therefore the department never completed a presentence report.[20] And because no Department of Corrections report or other evidence of criminal history besides the prosecution's statement was before the court and Weaver did not "'affirmatively acknowledge'" his criminal history as Mendoza requires, the State did not prove the existence of Weaver's misdemeanor convictions as required by former RCW 9.94A.500.[21] The court added in a footnote that although this court properly declined to consider Weaver's double jeopardy claim

---

[15] State v. Mendoza, 165 Wn.2d 913, 205 P.3d 113 (2009).

[16] State v. Weaver, 166 Wn.2d 1014, 212 P.3d 557 (2009).

[17] State v. Weaver, noted at 156 Wn. App. 1015, 2010 WL 2165353, at *1, rev'd, 171 Wn.2d 256, 251 P.3d 876 (2011).

[18] Weaver, 2010 WL 2165353, at *1.

[19] State v. Weaver, 171 Wn.2d 256, 258, 260, 251 P.3d 876 (2011).

[20] Weaver, 171 Wn.2d at 258.

[21] Weaver, 171 Wn.2d at 259-60.

as exceeding the scope of remand, Weaver could raise this issue at resentencing.[22]

At resentencing on July 7, 2011, the State again argued that Weaver's offender score was two, based on his two prior burglaries. The State provided the judgments and sentences for Weaver's two felony burglary convictions and certified copies of computer dockets for Weaver's misdemeanor criminal history to prove that his prior felony convictions did not wash out. The trial court accepted the court dockets as admissible proof of his convictions, concluded that the burglary convictions did not wash out, and confirmed Weaver's offender score as two.

The court also concluded that Weaver's two current convictions violated double jeopardy. After some discussion, it imposed the same indeterminate sentence on the count of rape in the second degree but did not impose any sentence on the count of rape of a child in the second degree.[23] Despite the court's double jeopardy ruling, it did not vacate the rape of a child conviction.

Weaver again appeals.

---

[22] Weaver, 171 Wn.2d at 260 n.2.
[23] The court rejected Weaver's arguments about jury instructions and declined to consider factual arguments Weaver attempted to raise about the accuracy of the DNA testing, ruling that Weaver must present this information to the Court of Appeals via personal restraint petition.

Analysis

Double Jeopardy

Weaver argues that the trial court's double jeopardy determination should result in dismissal of his rape of a child conviction. The State cross appeals, contending Weaver's two convictions did not violate double jeopardy. This court stayed Weaver's second appeal pending the Supreme Court's decision in State v. Smith, which the court decided on June 6, 2013. In light of Smith, we hold that Weaver's two convictions did not put him in double jeopardy.

A double jeopardy claim presents a question of law we review de novo.[24] The guaranty against double jeopardy in the United States and Washington State Constitutions protects against multiple punishments for the same offense.[25] A defendant may raise a double jeopardy challenge for the first time on appeal.[26] Multiple convictions may constitute a double jeopardy violation even when sentences run concurrently because separate convictions implicate other adverse collateral consequences.[27]

Within constitutional limits, a legislature has the power to define prohibited conduct and to assign punishment.[28] To analyze a double jeopardy claim, a court must determine what punishments the legislative branch has authorized and if it intended to impose separate punishments for the acts that led to the

---

[24] State v. Frodert, 84 Wn. App. 20, 25, 924 P.2d 933 (1996).
[25] State v. Calle, 125 Wn.2d 769, 776, 888 P.2d 155 (1995).
[26] State v. Adel, 136 Wn.2d 629, 631-32, 965 P.2d 1072 (1998).
[27] Calle, 125 Wn.2d at 773-74.
[28] Calle, 125 Wn.2d at 776.

defendant's convictions.[29]  First, the court examines the statutory language to determine if the applicable statutes expressly permit punishment for the same act or transaction.[30]  Second, if the relevant statutes do not reveal an express intent to impose multiple punishments, Washington courts apply a "same evidence test" that is similar to the rule set forth in Blockburger v. United States:[31] offenses are the "same offense" for purposes of double jeopardy when the crimes are the same in fact and in law.[32]  "Offenses are the same in fact when they arise from the same act or transaction.  They are the same in law when proof of one offense would also prove the other."[33]  Third, when two offenses satisfy the Blockburger/ "same evidence" test, courts look for any evidence of contrary legislative intent that would rebut the presumption that multiple convictions are appropriate.[34]

___

[29] Calle, 125 Wn.2d at 776 (citing Whalen v. United States, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980)); State v. Baldwin, 150 Wn.2d 448, 454, 78 P.3d 1005 (2003).

[30] Smith, 177 Wn.2d at 545 (quoting State v. Hughes, 166 Wn.2d 675, 681, 212 P.3d 558 (2009)); Calle, 125 Wn.2d at 776; State v. Martin, 149 Wn. App. 689, 698, 205 P.3d 931 (2009).  RCW 9A.52.050, where the legislature explicitly provided for cumulative punishments for crimes committed during a burglary, is an example of this express authorization.

[31] 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

[32] State v. Vladovic, 99 Wn.2d 413, 423, 662 P.2d 853 (1983).

[33] Martin, 149 Wn. App. at 699 (citing Calle, 125 Wn.2d at 777-78).

[34] Smith, 177 Wn.2d at 545 (quoting Hughes, 166 Wn.2d at 681-82); Calle, 125 Wn.2d at 780.  For example, where the degree of one offense depends on conduct constituting a separate offense, the merger doctrine may help determine legislative intent: "[W]hen separately criminalized conduct raises another offense to a higher degree, we presume that the legislature intended to punish both offenses only once, namely, for the more serious crime with the greater sentence."  State v. Leming, 133 Wn. App. 875, 882, 138 P.3d 1095 (2006) (citing State v. Freeman, 153 Wn.2d 765, 772-73, 108 P.3d 753 (2005)).

In Smith, a jury convicted the defendant of rape in the first degree and rape of a child in the second degree for his assault on 12-year-old L.S.[35] Like Weaver, Smith contended that his two convictions arising from the same assault violated the prohibition against double jeopardy.[36] Specifically, Smith argued that several cases from the Supreme Court and Court of Appeals stand for the proposition that force-based and status-based sex offenses cannot be punished as separate crimes when both arise from the same incident.[37] Smith relied heavily on State v. Hughes,[38] in which the defendant had sexually assaulted a 12-year-old child with cerebral palsy. Hughes pleaded guilty to rape in the second degree based on the victim's inability to consent because of physical helplessness or mental incapacity and also to rape of a child in the second degree. The Washington Supreme Court held in Hughes that because both crimes "require proof of nonconsent because of the victim's status," they are the same in fact and law under Blockburger, and convictions for separate offenses would violate double jeopardy.[39]

The court distinguished Smith from Hughes. While in Hughes the offenses were the same in law because both were based on the victim's status, one of Smith's crimes required proof of force, while the other required proof of the victim's status based on age. Therefore the two offenses in Smith were not

---

[35] Smith, 177 Wn.2d at 538.
[36] Smith, 177 Wn.2d at 545.
[37] Smith, 177 Wn.2d at 546.
[38] 166 Wn.2d 675, 679, 212 P.3d 558 (2009).
[39] Hughes, 166 Wn.2d at 683-84.

the same in law.[40] The court also found State v. Calle[41] "a close analogue."[42] In Calle, the court held that the defendant's separate convictions for incest and second degree rape arising from the same act of intercourse did not violate double jeopardy.[43] The court reasoned that the crimes were not the same in law under the Blockburger test because "[i]ncest requires proof of relationship," whereas "rape requires proof of force."[44] In Smith, the court concluded, "Smith suffered no double jeopardy when he was convicted of first degree rape and second degree rape of a child."[45]

The court's holding in Smith controls our double jeopardy analysis here. As in Smith, one of Weaver's offenses required proof of forcible compulsion, while the other required proof of the victim's status based on age. Although both crimes arise from the same act of rape and thus are the same in fact under Blockburger, they are not the same in law. We hold that Weaver's convictions for both rape in the second degree and rape of a child in the second degree do not violate the prohibition against double jeopardy.

Exceptional Sentence

Weaver revives an argument he raised and then abandoned in his first appeal—that the trial court "imposed an exceptional sentence that was not authorized by statute or jury verdict." Weaver contends that because the

---

[40] Smith, 177 Wn.2d at 548.
[41] 125 Wn.2d 769, 888 P.2d 155 (1995).
[42] Smith, 177 Wn.2d at 550.
[43] Calle, 125 Wn.2d at 782.
[44] Calle, 125 Wn.2d at 778.
[45] Smith, 177 Wn.2d at 550.

legislative amendments passed in response to the United States Supreme Court's decision in Blakely v. Washington[46] took effect after his trial, the court erred in "empaneling a jury and creating its own procedures for imposing an exceptional sentence."

The defendant in State v. Barberio[47] likewise did not challenge his exceptional sentence in his first appeal but then raised the issue in his second appeal following remand. The trial court in Barberio declined to reconsider its prior exceptional sentence on remand, and the Court of Appeals and Washington Supreme Court affirmed.[48] The Supreme Court cited to RAP 2.5(c)(1):[49]

> Clearly the rule is permissive for both the trial court and the appellate court. It is discretionary for the trial court to decide whether to revisit an issue which was not the subject of appeal. If it does so, RAP 2.5(c)(1) states that the appellate court may review such issue.[50]

The court emphasized that the exceptional sentence was "a clear and obvious issue" which Barberio should have raised in his first appeal. The court concluded that "[t]his case well illustrates the necessity of the rule which denies review at this late stage."[51]

---

[46] 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[47] 121 Wn.2d 48, 49-50, 846 P.2d 519 (1993).

[48] Barberio, 121 Wn.2d at 50, 51.

[49] RAP 2.5(c)(1) states,
If a trial court decision is otherwise properly before the appellate court, the appellate court may at the instance of a party review and determine the propriety of a decision of the trial court even though a similar decision was not disputed in an earlier review of the same case.

[50] Barberio, 121 Wn.2d at 51.

[51] Barberio, 121 Wn.2d at 52.

Weaver's case similarly illustrates the necessity of this rule. Like Barberio, Weaver did not challenge his exceptional sentence in his first appeal, though his abandoned argument demonstrates that he could have done so. Like the court in Barberio, the trial court at Weaver's resentencing did not "exercise its independent judgment to review and reconsider its earlier sentence"[52] but only reviewed the judgment and sentence in light of its double jeopardy determination, affirming in all other respects. Pursuant to the permissive rule of RAP 2.5(c)(1), we also decline to address Weaver's challenge to his exceptional sentence.

Special Verdict Jury Instructions

Weaver takes issue with the special verdict jury form and unanimity instructions for three reasons: (1) he argues that the aggravating factor of the victim's age was also an essential element of the offense and thus could not be a valid aggravating circumstance, (2) he contends that the special verdict form did not ensure that the jury unanimously found that the aggravating factor applied to a particular count, and (3) he argues that the special verdict instruction failed to advise the jury that they did not need to be unanimous to answer "no" to the special verdict. The State counters that because Weaver did not raise these specific objections at trial, under RAP 2.5(a) he has not preserved this issue for appeal. Weaver did, however, take exception at trial to the special verdict instructions and form, and we address his challenges here, reviewing jury

---

[52] Barberio, 121 Wn.2d at 51.

instructions de novo.[53] We find no merit in Weaver's first and second arguments, and the Supreme Court's decision in State v. Guzman Nuñez,[54] decided during this pending appeal, disposes of his third challenge.

Weaver first challenges the special verdict form, asserting that an aggravating factor that forms the basis for an exceptional sentence may not be based on "the very facts which constituted the elements of the offense proven at trial."[55] He argues that because R.T.'s age was an element of the crime of rape of a child, her age cannot also serve as an aggravating circumstance that justifies an exceptional sentence. We disagree. The aggravating circumstance was not only the victim's age—it was the fact that the crime resulted in the pregnancy of a child victim of rape.[56] This is not an element of the crime of rape of a child.

The special verdict form contained two questions, both of which the jurors answered "yes": "Was R.T. a child at the time of the commission of the crime in either count one or count two?" and "Did the defendant impregnate R.T. as a result of the commission of the crime in either count one or count two?" In instruction 12, the trial court told the jury, "Since this is a criminal case, each of you must agree for you to return a verdict." Instruction 13 read as follows:

---

[53] Singh v. Edwards Lifesciences Corp., 151 Wn. App. 137, 150, 210 P.3d 337 (2009) (citing Thompson v. King Feed & Nutrition Serv., Inc., 153 Wn.2d 447, 453, 105 P.3d 378 (2005)).

[54] 174 Wn.2d 707, 285 P.3d 21 (2012).

[55] State v. Ferguson, 142 Wn.2d 631, 648, 15 P.3d 1271 (2001).

[56] Former RCW 9.94A.535(2)(k) (2002).

> If you find the defendant guilty of either count one or count two, you will then use the special verdict form and fill in the blanks with the answer "yes" or "no" according to the decisions you reach. In order to answer the special verdict form "yes," you must unanimously be satisfied beyond a reasonable doubt that "yes" is the correct answer. If you have a reasonable doubt as to the question, you must answer "no."

Weaver's second argument is that "[b]y instructing the jurors that their answers . . . could be based on either count, the court did not ensure the jury verdict rested on unanimous agreement that the aggravating factor applied to a particular count." This argument fails. When Weaver's counsel raised this issue at his resentencing, the trial court concluded that

> there was only one act of intercourse, she was necessarily a child at the time of the commission of the act of intercourse which led to both guilty verdicts, and since it was one act of intercourse that led to a pregnancy, that pregnancy occurred with respect to both crimes.

It was impossible for the jury to find that the aggravating factor applied to the rape of a child count but not to the rape in the second degree count. We reject Weaver's contention that the verdict form did not ensure a unanimous verdict.

Finally, Weaver argued in his opening brief that the jury's verdict on the aggravating factors, and therefore the exceptional sentence, is flawed because the court's instructions inaccurately explained the process for reaching a nonunanimous verdict. Citing State v. Bashaw,[57] Weaver contended that the trial court erred by instructing the jury that it needed to be unanimous not only to answer "yes" to the special verdict but also to answer "no."

---

[57] 169 Wn.2d 133, 147, 234 P.3d 195 (2010), rev'd, Guzman Nuñez, 174 Wn.2d at 709-10.

Weaver submitted his opening brief before the Washington Supreme Court decided Guzman Nuñez, in which the court overruled Bashaw and held that a jury must also be unanimous in order to reject aggravating circumstances alleged on a special verdict form.[58] In his reply brief, Weaver appropriately acknowledges that in light of Guzman Nuñez, his arguments about "the apparent flaw in the unanimity instruction are no longer endorsed by the Supreme Court." His remaining argument that the special verdict form was "confusing" is not persuasive. The court's unanimity instruction here is identical to the instruction that the Supreme Court found proper in Guzman Nuñez[59] and thus properly stated the requirement for jury unanimity.

Offender Score

At resentencing on July 7, 2011, the State again argued that Weaver's offender score was two, based on his two prior burglaries. The State provided the judgments and sentences for Weaver's two felony burglary convictions, certified copies of computer dockets for Weaver's misdemeanor criminal history to prove that the burglary convictions did not wash out, and a certified copy of his driver's license. Weaver did not affirmatively acknowledge his criminal history. Weaver calls the State's proof "assertions coupled with documents of unsupported reliability," arguing that the dockets "use abbreviations that have

---

[58] Guzman Nuñez, 174 Wn.2d at 718-19.
[59] Guzman Nuñez, 174 Wn.2d at 710.

ambiguous meaning" and do not explain that he was convicted of a crime and not just a traffic infraction.

The relevant offender score washout rule provides,

> Class B prior felony convictions other than sex offenses shall not be included in the offender score, if since the last date of release from confinement (including full-time residential treatment) pursuant to a felony conviction, if any, or entry of judgment and sentence, the offender had spent ten consecutive years in the community without committing any crime that subsequently results in a conviction.[60]

Absent an affirmative acknowledgement by the defendant of facts and information introduced for the purposes of sentencing, the State must establish the criminal history by a preponderance of the evidence.[61] An unsworn document such as a prosecutor's summary, without more, is insufficient to satisfy due process, as is a defendant's mere failure to object to such a summary statement.[62] When a matter must be remanded for resentencing, the State may offer additional evidence to prove the defendant's prior convictions.[63] While the Supreme Court stated in Mendoza that the best evidence will "generally" be a certified copy of the judgment and sentence,[64] in In re Personal Restraint of Adolph,[65] the court reiterated that "'the State may introduce other comparable documents of record . . . to establish criminal history.'" The court concluded that

---

[60] Former RCW 9.94A.525(2) (2002). Former RCW 9.94A.525(7) and (12) (2002) direct the court to assign one point to each conviction for burglary in the second degree.
[61] Mendoza, 165 Wn.2d at 928-29.
[62] State v. Hunley, 175 Wn.2d 901, 913-14, 287 P.3d 584 (2012).
[63] Mendoza, 165 Wn.2d at 930.
[64] Mendoza, 165 Wn.2d at 930.
[65] 170 Wn.2d 556, 566, 243 P.3d 540 (2010) (quoting State v. Ford, 137 Wn.2d 472, 480, 973 P.2d 452 (1999)).

the State's burden is "'not overly difficult to meet' and may be satisfied by evidence that bears some 'minimum indicia of reliability.'"[66] "If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist. All of this information shall be part of the record."[67]

In Adolph, the court held that a Department of Licensing driving record abstract and a copy of the defendant's case history from the District and Municipal Court Information System was sufficient evidence for the trial court to find by a preponderance that Adolph had been convicted of DUI (driving under the influence of an intoxicant). The court reasoned that these records are "comparable to a certified judgment and sentence because they are official government records, based on information obtained directly from the courts, and can be created or modified only by government personnel following procedures established by statute or court rule."[68]

In State v. Chandler,[69] the reviewing court considered certified copies of court docket sheets presented in conjunction with a certified copy of Chandler's driver's license. Despite Chandler's contentions that the documents were "unreliable as a result of unsupervised data entry," the court concluded that "the cross-referenced identifying information supports the finding that the docket

---

[66] Adolph, 170 Wn.2d at 569 (quoting Ford, 137 Wn.2d at 480-81).
[67] Former RCW 9.94A.500(1) (2000).
[68] Adolph, 170 Wn.2d at 570.
[69] 158 Wn. App. 1, 7, 240 P.3d 159 (2010).

sheets are, at the very least, minimally reliable" to prove Chandler's prior DUI convictions.[70]

To prove Weaver's four misdemeanors, the State provided certified copies of dockets from the municipal courts of Seattle and Ferndale and a certified copy of Weaver's driver's license showing his birth date and driver's license number, which match the identifying information on the dockets.[71] While the dockets do contain some abbreviations that the State does not explain, important identifying features (date of birth, driver's license number) clearly pertain to Weaver. Moreover, each docket lists the code provision of each offense: Seattle Municipal Code (SMC) 11.56.320 (driving while license suspended) (DWLS)[72] and former RCW 46.20.021 (1991) (driving without a valid license).[73] All four offenses are misdemeanors, not traffic offenses, and each docket shows a finding of either "Guilty" or "G." The certified copies are part of the record as required by former RCW 9.94A.500.

The trial court did not err in determining that the State had proved Weaver's criminal history by a preponderance of the evidence. The certified copies of court dockets, especially when cross-referenced to Weaver's driver's license, provide more than the "minimum indicia of reliability" that satisfies due

---

[70] Chandler, 158 Wn. App. at 7.
[71] The driver's license and docket from Ferndale Municipal Court also contain details of Weaver's physical description, which also match.
[72] SMC 11.56.320(B), (C), and (D) provide that driving a motor vehicle while license is suspended or revoked is either a misdemeanor (third degree DWLS) or a gross misdemeanor (first or second degree DWLS).
[73] Former RCW 46.20.021(1) provides that "violation of this subsection is a misdemeanor."

process and former RCW 9.94A.500(1). The court correctly determined that Weaver's felony burglary convictions do not wash out and that his offender score is two.

Statement of Additional Grounds

In a statement of additional grounds, Weaver claims that his sentence should have been 20 months to life instead of not less than 250 months. He contends that the trial court "denies any and all evidence of my sterility" and that the court "denied factual information" concerning problems with the DNA evidence at trial. He questions the absence of a calibration record for the equipment used in DNA testing and accuses the State's expert of lying.

We reject Weaver's additional claims. As discussed above, Weaver was subject to indeterminate sentencing and received an exceptional minimum term sentence that he did not challenge in his first appeal and that we affirm. As for his other allegations, we do not disturb the jury's factual determinations on appeal.[74] If Weaver wishes to raise new factual allegations, he must do so in a collateral attack on his conviction via a personal restraint petition.[75]

Conclusion

Weaver's convictions for rape in the second degree and rape of a child in the second degree do not violate the prohibition against double jeopardy. We decline to address his untimely challenge to his exceptional sentence, and we

---

[74] See State v. Raleigh, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010).
[75] RAP 16.3; State v. Norman, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

reject his claims of error concerning the special verdict and his offender score.

We find no merit in the claims he raises in his statement of additional grounds.

We reverse the trial court's double jeopardy determination, otherwise affirm, and

remand for further proceedings consistent with this opinion.

Leach, C.J.

WE CONCUR: